Robert C. CHILTON,
Plaintiff-Appellant,

v.

SAVANNAH FOODS & INDUSTRIES, INC., et al., Defendants-Appellees.

No. 86–8660
Non-Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

April 13, 1987.

---

Joseph B. Bergen, Savannah, Ga., for plaintiff-appellant.

Miller, Simpson & Tatum, John M. Tatum, Savannah, Ga., for defendants-appellees.

Before FAY, ANDERSON and EDMONDSON, Circuit Judges.

PER CURIAM:

Plaintiff/Appellant in this case brought suit in the Superior Court of Chatham County, Georgia to recover benefits under the Employment Retirement Security Act of 1974, 29 U.S.C.A. sec. 1001, *et seq.* (West 1985) (ERISA). Defendants/Appellees removed the action to the United States District Court for the Southern District of Georgia, which ruled in favor of Defendants. We affirm the decisions of that court.

Robert Chilton was employed as a full-time executive officer by Savannah Foods & Industries, Inc. ("Savannah Foods") on December 3, 1968. He continued to work for Savannah Foods until October of 1978, when he became President and Chief Executive Officer of Savannah Foods' wholly-owned subsidiary, the Jim Dandy Corporation of Birmingham, Alabama ("Jim Dandy"). Chilton moved to Birmingham but continued to hold the office of Vice President of Savannah Foods and continued to receive his paycheck from Savannah Foods.

In 1979, Savannah Foods decided to sell Jim Dandy. On February 16, 1981, while that sale was being effected, Chilton was replaced as Chief Executive Officer of Jim Dandy. Thereafter, Chilton had no responsibilities of any sort to Jim Dandy, and he did not report to work at either Jim Dandy or Savannah Foods.

With the sale of Jim Dandy, Savannah Foods effectively terminated an employment position for Chilton, who was then 60 years of age. Savannah Foods worked out an agreement with Chilton whereby he would be retained, without any reduction in salary, as a consultant until he reached the age of 62. At that time, he would retire and receive compensation under Savannah Foods' Retirement Income Plan. On July 8, 1981, the parties formalized that agreement, entering into a "Deferred Compensation Agreement." The district court found that the parties intended for Exhibit A of the Deferred Compensation Agreement to be an exclusive listing of the plaintiff's benefits.

After the parties executed the Deferred Compensation Agreement, Chilton moved to Boston, Massachusetts, became a part-time consultant employee of Strategic Planning Institute, and enrolled as a student at Boston University to obtain a doctorate in business administration.

On December 23, 1981, Savannah Foods adopted an employee stock option plan (ESOP) for its employees. The plan was open to all persons who were employees of Savannah Foods on January 1, 1981. The plan defined "employee" as "any person regularly engaged in rendering personal services to the Company or to a Company Member, who works full-time and receives Compensation from the Company or from a Company Member on a regularly fixed basis, and who is subject to the control of the Company or a Company Member...." The plan listed Company Members participating in the plan as of January 1, 1981 as Everglades Sugar Refinery, Inc. and Transales Corporation.

On December 29, 1981, Savannah Foods adopted another benefit plan for its employees. This plan, a retirement plan known as "Employee Retirement Savings Plan" (SAVERS) provided that employees would be eligible for the plan if they were full-time employees of Savannah Foods on December 31, 1981.

In January, 1982, Savannah Foods enrolled Chilton in ESOP automatically and enrolled him in the SAVERS plan upon his application. Neither ESOP nor SAVERS was listed in Exhibit A of the Deferred Compensation Agreement. On April 2, 1982, Lee Phillips, the Corporate Director of Personnel of Savannah Foods, advised Chilton by letter that Savannah Foods had made an error in determining his eligibility for the two plans. Mr. Phillips stated that the ESOP and SAVERS plan were not included in the fringe benefits that Chilton was entitled to receive under the Deferred Compensation Agreement; consequently, Savannah Foods terminated him from the two plans.

After continued correspondence between the two parties, Chilton filed suit against Savannah Foods and its ESOP and SAVERS Plan in the Superior Court for the County of Chatham, Eastern Judicial Circuit, State of Georgia. Defendants, acting pursuant to 28 U.S.C.A. sec. 1441(a) (West 1973), removed the case to the United States District Court for the Southern District of Georgia. Chilton moved for a remand of the case to the state court, but the district court denied his motion. Defendants then filed a motion to strike Chilton's demand for a jury trial; the district court granted that motion.

The parties then filed cross-motions for summary judgment. The district court denied Chilton's motion and granted Defendants' motion in part, ruling that Defendants had met their burden of proving that the exclusion of Chilton from the SAVERS plan was not arbitrary and capricious. After a bench trial, the judge dismissed the case with prejudice, finding that there was substantial evidence to support Defendants' decision that Chilton was ineligible for the ESOP. Chilton now appeals to this court.

Chilton's first argument is that the district court erred in denying his motion to remand the case to state court. Section 1132(e)(1) of Title 29 of U.S.C. provides that state courts of competent jurisdiction and District Courts of the United States have concurrent jurisdiction over actions to recover retirement benefits. Section 1441(a) of Title 28 of U.S.C. allows defendants in a state court action to remove the case to a

district court having original jurisdiction of the case. According to Chilton, the concurrent jurisdiction of the district courts under 29 U.S.C. sec. 1132(e)(1) is not the prerequisite original jurisdiction of 28 U.S.C. sec. 1441(a). Chilton argues therefore, that removal was improper and that the district court erred by denying his motion to remand the case to state court. We find Chilton's argument unpersuasive.

Most of the jurisdictions that have considered this argument have rejected it. *See Harper v. San Diego Transit Corp.,* 764 F.2d 663, 666 n. 2 (9th Cir.1985); *Mercy Hospital Ass'n v. Miccio,* 604 F.Supp. 1177 (E.D.N.Y.1985); *McConnell v. Marine Engineers Beneficial Ass'n,* 526 F.Supp. 770 (N.D.Cal.1981); *but see Lederman v. Pacific Mutual Life Ins. Co.,* 494 F.Supp. 1020 (C.D.Cal.1980). We agree with the majority view.

■ We note first that section 1441(a) allows removal "[e]xcept as otherwise expressly provided." Neither 29 U.S.C. sec. 1132(a)(1) nor (e)(1) contains an express contradiction of this permission to remove cases. Absent such an express provision, we cannot say that Congress in granting concurrent jurisdiction intended to foreclose removal of ERISA actions. *See McConnell,* 526 F.Supp. at 772 n. 1 (express provision clause of section 1441(a) inserted as part of the 1948 revision of the Judicial Code, possibly to counteract holding of certain federal courts that congressional grant of concurrent jurisdiction prevented removal). *Cf. Menhorn v. Firestone Tire & Rubber Co.,* 738 F.2d 1496, 1500 n. 2 (9th Cir.1984) ("Congress simply increased the number of forums to which a claimant might have access [in ERISA actions].... Either party of course retains the right of access to a federal forum in actions ERISA governs, ... plaintiff by filing there, 29 U.S.C. sec. 1132(e)(1), and defendant by removing, 28 U.S.C. sec. 1441.").

■ Chilton would have this court disallow removal of cases over which state and federal courts have concurrent jurisdiction by equating "original jurisdiction" with "exclusive jurisdiction." To do so, however, would make 28 U.S.C. sec. 1441(a) meaningless. The law is clear that removal jurisdiction is derivative in nature. *Arizona v. Manypenny,* 451 U.S. 232, 242, 101 S.Ct. 1657, 1664–65, 68 L.Ed.2d 58 (1981). Thus, if the state court has no jurisdiction over a case, the federal court acquires none upon removal, even if the federal court would have had jurisdiction if the suit had originally been brought there. *Id.* at 242 n. 17, 101 S.Ct. at 1665 n. 17; *McRory v. Hobart Bros. Co., Inc.,* 732 F.2d 1533 (11th Cir.1984).

Therefore, if an action brought in state court is one over which the federal courts have exclusive jurisdiction, it cannot be removed from state court to federal court because the state court had no jurisdiction at the outset. To equate "original" and "exclusive" jurisdiction would be to prevent removal in any situation and make section 1441(a) meaningless. Accordingly, we affirm the district court's denial of Chilton's motion to remand the case to state court.

■ Chilton's next argument is that the district court erred by striking his demand for a jury trial. He cites *Calamia v. Spivey,* 632 F.2d 1235 (5th Cir.1980),[1] for the proposition that Congress intended 29 U.S.C. sec. 1132(a)(1) to create legal rights that would entitle plaintiffs to a jury trial. The holding in *Calamia,* however, was exactly the opposite. The *Calamia* court did consider *Stamps v. Michigan Teamsters Joint Council 43,* 431 F.Supp. 745 (E.D. Mich.1977), which held that plaintiffs under that section of ERISA are entitled to a jury trial; but the *Calamia* court then joined the Seventh Circuit in rejecting the reasoning of *Stamps. Calamia,* 632 F.2d at 1237. Because *Calamia* is binding precedent, the law of this circuit is settled: Chilton was not entitled to a jury trial.

Chilton's final argument is that the district court erred in ruling that he was ineligible for the ESOP and SAVERS plan.

1. In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981), this court adopted as precedent all decisions of the former Fifth Circuit Court of Appeals decided prior to October 1, 1981.

The standard of review for both federal district courts and federal appellate courts is limited in ERISA cases. "According to the clear weight of federal authority, the actions of the trustees in the administration of the pension plan must be sustained as a matter of law unless plaintiff can prove such activities have been arbitrary or capricious." *Bayles v. Central States, Southeast, Etc.*, 602 F.2d 97, 99 (5th Cir. 1979). In this case, Chilton has not sustained his burden of proof. Because the Deferred Compensation Agreement made no mention of the ESOP and SAVERS plan, Savannah Foods' decision that the Deferred Compensation Agreement failed to grant Chilton those benefits was neither arbitrary nor capricious.

Chilton argues, however, that the Deferred Compensation Agreement made him a full-time employee of Savannah Foods and that as such he was eligible for the two benefit plans. We disagree. The record reveals that the Deferred Compensation Agreement did not make him an employee within the meaning of the ESOP and SAVERS plan.

█ The SAVERS plan required that an applicant be a full-time employee of Savannah Foods. The Deferred Compensation Agreement allowed Chilton to move to Boston, work part-time for another employer, and attend Boston University part-time. Given Chilton's activities during 1981, he failed to prove that Savannah Foods acted capriciously or arbitrarily in deciding that he was not employed on a permanent, full-time basis on December 31, 1981, and thus ineligible for the SAVERS plan.

█ Nor did Chilton carry his burden of proof in regard to the ESOP. To be eligible for that plan, a person must have been "regularly engaged in rendering personal services to [Savannah Foods] or to a Company Member" on or after January 1, 1981. On January 1, 1981, Chilton was not regularly engaged in rendering personal services to Savannah Foods. Rather, he was rendering personal services to Jim Dandy Corporation, which was not a Company Member under the ESOP. After he was terminated from Jim Dandy, Chilton was never at any time regularly engaged in rendering personal services to Savannah Foods or a Company Member. He thus failed to meet one of the criteria for participation in the ESOP. The fact that Chilton may have met other ESOP criteria because of his status under the Deferred Compensation Agreement cannot make him eligible for the plan.

In light of this evidence, we cannot say that the district court erred in ruling that Chilton failed to prove that the defendants acted arbitrarily or capriciously. Accordingly, the judgment of the district court is AFFIRMED.