William B. WHITT, as
administrator, Plaintiff,

v.

The GOODYEAR TIRE & RUBBER
COMPANY, et al., Defendants.

Harley AMOS, et al., Plaintiffs,

v.

BLUE CROSS AND BLUE SHIELD OF
ALABAMA, et al., Defendants.

Ray E. EITEL, Plaintiff,

v.

HALLIBURTON COMPANY
EMPLOYEE'S TRUST,
Defendant.

Civ. A. Nos. 87–AR–1442–M,
87–AR–1644–M and
87–AR–5394–NW.

United States District Court,
N.D. Alabama,
Middle and Northwestern Divisions.

Dec. 4, 1987.

Supplementary Memorandum Opinion
Dec. 22, 1987.

Rick DiGiorgio, Jaffe, Burton & DiGiorgio, Rogers–Taylor Manor, Birmingham, Ala., for Whitt.

John O. Morrow, Jr., Florence, Ala., for Amos.

Daniel B. King and Robert H. King, King & King, Gadsden, Ala., for Eitel.

James D. Pruett, Pruett, Turnbach & Warren, P.C., Gadsden, Ala., for Goodyear Tire & Rubber Co.

Charles D. Stewart and Ann M. Watson, Spain, Gillon, Tate, Grooms & Blan, Birmingham, Ala., for Blue Cross and Blue Shield of Alabama.

Lawrence B. Clark, Sally S. Reilly, Lange, Simpson, Robinson & Somerville, Birmingham, Ala., for Halliburton Co. Employee's Trust.

## MEMORANDUM OPINION

ACKER, District Judge.

The plaintiffs in the above-entitled causes apparently so strongly believe in their right to the jury trial guaranteed by the Seventh Amendment that they are not willing to roll over and play dead and to accept the growing assumption, as yet without Supreme Court sanction, that the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, *et seq.* (ERISA), both precludes all state law remedies in cases which fall under ERISA *and* simultaneously denies the complaining party any right to trial by jury, no matter whether the remedies he seeks are considered traditionally "legal" or traditionally "equitable."

Each of the three above-entitled cases presents the same question. This court has not consolidated the cases, but because this opinion will reveal the court's rationale for its ruling in all three cases, the cases will be treated together for the purposes of this opinion.

In *Whitt v. Goodyear*, Whitt filed his complaint in the state court. He never invoked nor mentioned ERISA. He stated Alabama causes of action for breach of contract, negligence and fraud. He demanded a jury trial. Absent some constitu-

tional legislative intervention, his claims would clearly entitle him to a jury trial. Goodyear, correctly characterizing the relationship between the parties to implicate ERISA, removed the case to this court and seeks not only to preempt all of Whitt's state claims and to limit Whitt to any remedies provided by ERISA, but also to strike Whitt's jury demand.

In *Amos v. Blue Cross*, Amos filed his complaint in the state court. He never invoked nor mentioned ERISA. He stated Alabama causes of action for breach of contract and bad faith refusal to pay a clearly due claim. He demanded a jury trial. Absent some constitutional legislative intervention, each of his claims would clearly entitle him to a jury trial. Blue Cross, correctly characterizing the relationship between the parties to implicate ERISA, removed the case to this court and seeks not only to preempt all state claims and to limit Amos to the remedies provided by ERISA, but also seeks to strike Amos' jury demand.

In *Eitel v. Halliburton*, Eitel filed his complaint in the state court. He never invoked nor mentioned ERISA. He stated an Alabama cause of action for breach of contract. He demanded a jury trial. Absent some constitutional legislative intervention, his claim would clearly entitle him to a jury trial. Halliburton, correctly characterizing the relationship between the parties to implicate ERISA, removed the case to this court and seeks not only to preempt the state claim and to limit Eitel to the remedies provided by ERISA, but also to strike Eitel's jury demand.

The reader should by now have detected such striking similarities between the procedural and substantive postures of these three cases as to make them virtually identical.

It is now beyond argument that ERISA is "the exclusive vehicle for actions by ERISA-plan participants and beneficiaries asserting improper processing of a claim for benefits." *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. ——, 107 S.Ct. 1549, 1555, 95 L.Ed.2d 39 (1987); *Seafarer's Welfare Plan v. Dixon*, 512 So.2d 53 (Ala. 1987). The idea of congressional ERISA preemption under the aegis of the "commerce clause" was anticipated by the Eleventh Circuit even prior to *Pilot Life* in *Howard v. Parisian, Inc.*, 807 F.2d 1560 (11th Cir.1987). While *Howard v. Parisian, Inc.* recognizes that state remedies are preempted, the exact extent and variety of the ERISA remedies themselves have not as yet been determined. In *Howard v. Parisian, Inc.*, the Eleventh Circuit said as to the scope of the available remedies:

Howard also argues that this Court should hold that extra-contractual relief is available under ERISA for the fraudulent and malicious denial of medical benefits under an employee welfare benefit plan and should fashion that relief to parallel the relief available under state law. *See Helms v. Monsanto Co.*, 728 F.2d 1416, 1420 (11th Cir.1984) (ERISA intends courts to develop federal common law concerning rights and obligations under employee benefit plans). In *Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S. 134, 105 S.Ct. 3085, 3089–94, 87 L.Ed.2d 96 (1985), the Supreme Court held that Section 409(a) of ERISA, 29 U.S.C.A. § 1109(a), does not create a private right of action in favor of a plan beneficiary against a plan fiduciary for extra-contractual compensatory or punitive damages on account of the improper refusal to pay benefits. However, the Court did not address whether such relief was available under any other provision, *Russell*, 473 U.S. at 139 n. 5, 105 S.Ct. at 3089 n. 5, and Justice Brennan, in his concurrence in which three other Justices joined, strongly indicated that Section 502(a)(3), 29 U.S.C.A. § 1132(a)(3), which allows a beneficiary to "obtain other appropriate equitable relief," permits a beneficiary to recover such extra-contractual damages. *Russell*, 473 U.S. at 148–58, 105 S.Ct. at 3094–99 (Brennan, J., concurring). Nonetheless, even assuming *arguendo* that such extra-contractual relief is available under ERISA, the assertion of claims arising under state law is still preempted.

807 F.2d at 1565.

The scope of the relief to which these three plaintiffs may be entitled under

ERISA is not placed in question by defendants' motions to strike plaintiffs' jury demands, except perhaps by implication if it makes a difference whether the types of relief being sought are categorized as "legal" or "equitable," with the right to a jury trial depending upon which category it fits in. This very judge denied Howard's right to a jury trial in *Howard v. Parisian, Inc.* This embarrassing fact not only presents this court with a sense of *deja vu* but this court is now being asked by plaintiffs to swim upstream against a current to which this court contributed some volume of downhill water, however slight.

In *Howard v. Parisian, Inc.*, the Eleventh Circuit quite properly avoided the issue of entitlement to a jury trial, as to which this court had spoken, by saying:

> This Court lacks jurisdiction to review the district court's order striking Howard's demand for a jury trial....

807 F.2d at 1566.

Nevertheless, the Eleventh Circuit went on to say in *dictum:*

> The former Fifth Circuit squarely held that such actions are not entitled to trial by jury. *Calamia v. Spivey,* 632 F.2d 1235, 1236–37 (5th Cir.1980). Every other circuit addressing the issue has reached the same conclusion. *See, e.g., Katsaros v. Cody,* 744 F.2d 270, 278–79 (2d Cir.), *cert. denied,* 469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984); *Turner v. CF & I Steel Corp.,* 770 F.2d 43, 47 (3d Cir.1985), *cert. denied,* 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986); *Berry v. Ciba–Geigy Corp.,* 761 F.2d 1003, 1006–07 (4th Cir.1985); *Wardle v. Central States, Southeast & Southwest Areas Pension Fund,* 627 F.2d 820, 828–30 (7th Cir.1980), *cert. denied,* 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981); *In re Vorpahl,* 695 F.2d 318, 319–22 (8th Cir.1982).

807 F.2d at 1567.

This court is now confronted with the somewhat awesome task of evaluating the significance of *Howard v. Parisian, Inc.*, as that case may elucidate the question of the right to a jury trial in all ERISA cases. As noted, it was this very judge who struck Howard's demand for a jury. It was also this very judge who was not asked to consider and who did not consider the Seventh Amendment implications in *Howard v. Parisian, Inc.* As further noted, the Eleventh Circuit's statement is clearly *dictum,* because Howard's attempted appeal concerning the jury trial issue was dismissed for lack of jurisdiction, a fact which made the Eleventh Circuit's comments unnecessary to its decision. Nevertheless, because the expressions do come from the Eleventh Circuit, this court should and will give them careful consideration.

The first case cited in the above quotation in *Howard v. Parisian, Inc.*, from the Eleventh Circuit bearing on the jury trial issue is *Calamia v. Spivey,* 632 F.2d 1235 (5th Cir.1980), a case which is admittedly binding on the Eleventh Circuit and on this court. In *Calamia,* the Fifth Circuit was dealing with a complaint which only "asked the court to *declare his rights* under the pension." (emphasis supplied). 632 F.2d at 1236. In *Calamia,* the plaintiff was seeking classical equitable relief in the form of a declaration as to his future entitlements. Calamia's case is therefore clearly distinguishable from the cases of Whitt, Amos, and Eitel, each of whom seeks to recover a sum of money allegedly presently due and owing. None of the instant plaintiffs seeks any relief that can legitimately be called "equitable." Furthermore, in *Calamia,* an exercise of discretion by pension trustees was being examined. In agreeing with *Wardle v. Central States, Southeast & Southwest Areas Pension Fund,* 627 F.2d 820 (7th Cir.1980), the Fifth Circuit in *Calamia* pointed out that "*Wardle* examined prior cases and determined that similar claims were previously considered equitable and that the kind of determination required—whether the pension fund acted arbitrarily and capriciously—was *one traditionally performed by judges."* (emphasis supplied) 632 F.2d at 1237. In other words, the *Calamia* court was only called upon to rule on whether or not Calamia's particular claims were of the variety "traditionally performed by judges." In its conclusion

that Calamia's claims were of the variety traditionally equitable and therefore performed by judges and not juries, the Fifth Circuit was, of course, correct. When the Fifth Circuit said "that ERISA does not entitle the appellant [Calamia] to a jury trial" (632 F.2d at 1237), *it was not holding that no ERISA claim, even a purely legal claim, can ever require a jury trial.* In *Calamia,* the Seventh Amendment is not mentioned once. In *Calamia,* the Fifth Circuit simply does not discuss the serious constitutional issue which would have been presented if Calamia's claim had been of the traditional "legal" or "common law" variety.

In its *dictum* in *Howard v. Parisian, Inc.,* the Eleventh Circuit—regrettably at this court's implied invitation—stated that every circuit addressing the issue has reached the conclusion that ERISA actions are not entitled to trial by jury. This, unfortunately, is an overstatement. Not only does *Howard v. Parisian, Inc.,* overlook the distinction which is implicit, if not express, as between traditionally "equitable" and traditionally "legal" relief, discussed in almost every decision cited in *Howard v. Parisian, Inc.,* but it fails to cite *Pollock v. Castrovinci,* 476 F.Supp. 606 (S.D.N.Y.1979), *aff'd mem.,* 622 F.2d 575 (2d Cir.1980), which cannot be reconciled with *Katsaros v. Cody,* 744 F.2d 270 (2d Cir.1984), without acknowledging that *Katsaros* deals only with a claim for equitable relief. The *Katsaros* court said:

> There is no right to a jury trial of ERISA actions against pension fund trustees *seeking the equitable remedy of restitution.*

744 F.2d at 278 (emphasis supplied).

In *Pollock,* which was certainly not overruled by *Katsaros,* the Second Circuit had previously said:

> The litmus test for determining the right to a jury trial is whether the nature of the legal issues to be tried is "legal" or "equitable."

476 F.Supp. at 608.

In *Paladino v. Taxicab Industry Pension Fund,* 588 F.Supp. 37 (S.D.N.Y.1984), the district court in New York followed *Pol-*

*lock* and the still leading case, *Stamps v. Michigan Teamsters Joint Council No. 43,* 431 F.Supp. 745 (E.D.Mich.1977), and required a jury trial for a plaintiff who had sued only for money damages. The *Paladino* court, Judge Brieant, refused to believe that congressional silence on the jury right issue in ERISA "reflects an intention that suits for pension benefits by disappointed applicants are equitable." 588 F.Supp. at 40 (quoting from *Wardle* at 627 F.2d at 829). This court shares the belief of Judge Brieant.

■ Congress did not intend by its silence to preclude trial by jury in *all* ERISA cases. Why is this true? An important tool of statutory construction, here applicable, is that legislation must be construed, if at all possible, so as to avoid any constitutional confrontation. There would clearly be a confrontation between congressional authority to regulate interstate commerce as provided by Article I, Section 8, and the Seventh Amendment's limitation on the congressional power to interfere with trial by jury in civil cases not equitable in nature. If ERISA should ever be interpreted both to eliminate all state remedies and simultaneously to wipe out trial by jury on all possible ERISA issues, the fact that Congress chose to say nothing about whether or not parties in ERISA actions are entitled to a jury trial militates strongly toward a congressional recognition of this very problem of constitutional conflict, and a deliberate intent to retreat from it. It would have been a simple matter, either by express provision in the ERISA statute or by clear legislative history, to reveal a congressional intent that the national regulation and protection of pensions and employee medical benefits are so important to interstate commerce and to the general welfare that not only are traditional causes of action in this area preempted but in the name of expedition and fairness non-jury resolution of all such issues is mandated. This void in the statute speaks louder than words.

■ Secondly, there would have been little or no reason for Congress in ERISA formally to recognize the distinction be-

tween law and equity if it had not had its eye on the Seventh Amendment implications of a complete elimination of trial by jury. 29 U.S.C. § 1132(a) provides, *inter alia:*

> A civil action may be brought—
> > (1) by a participant or beneficiary—
> >
> > \* \* \* \* \* \*
> >
> > (B) *to recover benefits due to him under the terms of his plan,* to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
> >
> > \* \* \* \* \* \*
> >
> > (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) *to obtain other appropriate equitable relief* (i) to redress such violations....

(emphasis supplied).

By using the term "equitable relief," Congress clearly recognizes the distinction between relief of a "legal" nature and relief of an "equitable" nature. If the intention had been legislatively to transmogrify all formerly "legal" or "common law" actions into something "equitable," it would have been a simple matter to make that intention known. In all likelihood, the distinction between this situation and the transmogrification recognized in *Katchen v. Landy,* 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed. 2d 391 (1966), was that in *Katchen* Congress had availed itself not of the "commerce clause" but of Article I, Section 8, of the Constitution which expressly grants the power to Congress "to establish ... uniform Laws on the subject of Bankruptcies throughout the United States." Because "bankruptcy" is and always has been an "equitable" remedy, "legal" claims can be converted into "equitable" matters by the simple event of bankruptcy, and a jury trial can therefore be eliminated without violation to the Seventh Amendment. There is, then, a marked difference between the "bankruptcy clause" and the "commerce clause." Few would deny that the "commerce clause" has come a long way since *Gibbons v. Ogden,* 9 Wheat. 1, 6 L.Ed. 23

(1824), but in ERISA Congress did not even try to mount an argument that a jury trial constitutes such a burden on interstate commerce that in order to lighten that burden Congress must override the Seventh Amendment. Where a tension exists between economic interests, such as those addressed in ERISA, and fundamental constitutional rights, such as those contained in the Bill of Rights, the fundamental rights must prevail. This principle pervaded the decisions of the Supreme Court even before the "preferred position" doctrine was enunciated by Mr. Justice Stone in his famous footnote 4 in *United States v. Carolene Products Co.,* 304 U.S. 144, 58 S.Ct. 778, 82 L.Ed. 1234 (1938), which recognized that certain rights are so fundamental as to hold a preferred position in the constitutional scheme of things. Although freedom of speech may be higher on the priority list than the right to a jury trial, the right to jury trial has always had a place of honor in Anglo–Saxon jurisprudence. It would be both unfair and incorrect to describe the right to trial by jury as "not fundamental." If *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), guarantees, as it does, the right to counsel in criminal cases under the Sixth Amendment as a *fundamental* right, why should not the Seventh Amendment's right to a jury trial in a civil case also be considered *fundamental?* The "commerce clause" cannot be likened to a flow of molten lava which consumes every other constitutional principle in its path.

These concepts found their way into the rationale employed by the Supreme Court in *Curtis v. Loether,* 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974), in which the Court found that the Seventh Amendment requires a jury trial of a Title VII action brought for a discriminatory refusal to lease an apartment where the only relief sought was "legal," regardless of the argument there made that the congressional intent was to impose non-jury resolution of such claims.

It is, of course, true that since *Great American Federal Savings & Loan Ass'n v. Novotny,* 442 U.S. 366, 99 S.Ct. 2345, 2350, 60 L.Ed.2d 957 (1979), when the Su-

preme Court said of the Civil Rights Act of 1964, "because the Act expressly authorizes only equitable remedies, the courts have consistently held that neither party has a right to a jury trial," the federal courts have somehow continued on that assumption without the Seventh Amendment question having even been addressed except tangentially in Mr. Justice Rehnquist's concurring opinion in *Albemarle Paper Company v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 2385, 45 L.Ed.2d 280 (1975), where Mr. Justice Rehnquist said:

> To the extent, then, that the District Court retains substantial discretion as to whether or not to award backpay notwithstanding a finding of unlawful discrimination, the nature of the jurisdiction which the court exercises is equitable, and under our cases neither party may demand a jury trial. To the extent that discretion is replaced by awards which follow as a matter of course from a finding of wrongdoing, the action of the court in making such awards could not be fairly characterized as equitable in character, and would quite arguably be subject to the provisions of the Seventh Amendment.

Perhaps the unspoken reason for the federal courts' reluctance to allow the trial of Title VII cases by a jury is their distrust of Southern juries and their fear that juries would refuse or fail fairly to apply the remedies enunciated in Title VII to compensate for acts of racial discrimination. This fear, if it had a basis in fact in the early years after the enactment of Title VII, has no basis in fact today. Today many black plaintiffs, in cases which easily could be framed as Title VII employment discrimination cases, deliberately invoke 42 U.S.C. § 1981 and *demand a jury trial,* something which they certainly have a right to do under clear case law, despite the fact that § 1981 no more mentions jury trial than Title VII does. *See, e.g., Lincoln v. Board of Regents,* 697 F.2d 928 (11th Cir. 1983). This court takes judicial notice of the fact that most federal juries in the

Northern District of Alabama are fairly representative of the two basic racial groups in Alabama and that in § 1981 cases they routinely do render reasonable and fair verdicts in favor of the victims of racial discrimination in the work place, including substantial awards of punitive damages not available under Title VII.[1] This court is not sure that the Supreme Court would rule today that a plaintiff is not entitled to a jury trial in a Title VII case even where that plaintiff does not seek reinstatement or other traditionally "equitable" relief.

Not only does The Eleventh Circuit in *Howard v. Parisian, Inc.,* not mention *Pollock* as an opposite expression by the Second Circuit, but it fails to mention *Bugher v. Feightner,* 722 F.2d 1356 (7th Cir.1983), *cert. denied,* 469 U.S. 822, 105 S.Ct. 98, 83 L.Ed.2d 43 (1984), which was decided by the Seventh Circuit after the Seventh Circuit's oft-cited *Wardle* case. There the Seventh Circuit said in another ERISA case:

> *A suit for breach of contract seeking damages was traditionally an action at law and thus triable to a jury under the Seventh Amendment.* Therefore, in an action brought for delinquent contributions under 29 U.S.C. § 185(a) either party can properly demand a jury trial.

722 F.2d at 1358 (citations and footnotes omitted) (emphasis supplied).

The Seventh Circuit went on to say:

> We conclude that plaintiffs had a legal remedy available to them, i.e., a claim for damages for breach of contract under 29 U.S.C. § 185(a), as well as an equitable remedy under 29 U.S.C. § 1132(a)(3). In this situation the Seventh Amendment issue is controlled by *Dairy Queen,* [369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962)], *supra.* The form of plaintiffs' complaint does not control the characterization of the action as either equitable or legal. The necessary prerequisite to the right to maintain an equitable action is the unavailability of an adequate reme-

---

**1.** The most recent proof of this pudding is a jury verdict which included $50,000 in punitive damages rendered in this very court on this very day, December 4, 1987, in favor of a black man against his former employer in a case brought under 42 U.S.C. § 1981.

dy at law. There has been no showing that the legal remedy is inadequate, even assuming that an analysis of the defendant's business records is necessary in order to compute the measure of damages. Therefore, whether we construe plaintiffs' complaint as solely a legal claim or as a joinder of legal and equitable actions ... the *appellant was entitled to a jury trial on the legal issues.*

Our holding herein does not conflict with this court's decision in *Wardle v. Central States, Southeast and Southwest Areas Pension Fund,* 627 F.2d 820 (7th Cir.1980), *cert. den.,* 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981). In that case, the court concluded that there was no right to a jury trial in an action brought by a beneficiary under 29 U.S.C. § 1132(a)(1)(B). The court reasoned that *such actions were traditionally equitable in nature* and that Congress had indicated no intention of altering that characterization in its promulgation of the ERISA enforcement provisions....
722 F.2d at 1360 (citations partially omitted) (emphasis supplied).

 A superior analysis of the problem with which this court is faced is found at 96 Harvard L.Rev. 737 (1983), in "The Right to Jury Trial in Enforcement Actions under Section 502(a)(1)(B) of ERISA." In fact, this exposition constitutes such a good summary of the problem that a considerable portion of it will be hereinafter quoted and is adopted by the court as a correct statement of the applicable principles of constitutional law. The Harvard Law School writer (leaving out the footnotes) says:

### THE CONSTITUTIONAL RIGHT TO JURY TRIAL

Not all causes of action currently in force existed in 1791, when the seventh amendment was ratified. Because that amendment preserve[s] the "jury trial right in [s]uits at common law," the jury trial guarantee may appear not to encompass statutory actions created after 1791. Nonetheless, Supreme Court precedent clearly commands a constitutional right to jury trial in any action asserting rights and remedies analogous to those embodied in a common law writ that existed in 1791 if the common law analogue to the statutory action was tried before a jury. The seventh amendment thus begets a counterfactual inquiry: if the statutorily created civil action had existed in England in 1791, would a court using the Federal Rules of Civil Procedure have tried the case as an action at law or a suit in equity?

### A. Questions of Law and Questions of Fact

The common law jury trial practice adopted by the seventh amendment drew a distinction between questions of law and questions of fact and limited the jury to resolving disputed questions of fact. To be faithful to this practice, courts addressing demands for jury trials should first scrutinize the litigants' claims to determine if they present any questions of fact.

A plan-enforcement action ordinarily does not raise disputed factual issues that would warrant a jury trial. Because such an action enforces only the "terms of the [pension] plan," the beneficiary's claim typically alleges that the trustee misinterpreted those terms. But courts subject a trustee's interpretations to a narrow scope of review, a practice not modified by ERISA. The trustee's interpretation is upheld unless his action is "arbitrary and capricious," unsupported by "substantial evidence," or "erroneous ... on a question of law." These three formulations have been used interchangeably and thus collapse into one standard: a trustee's interpretation of the terms of a pension plan is overturned only when that interpretation is erroneous as a matter of law. Thus, in plan-enforcement actions in which the only issue is the legal validity of the trustee's interpretation of the terms of the plan, no seventh amendment right to jury trial would attach. In most plan-enforcement actions, therefore, the limited review accorded a trustee's decision is dispositive of the seventh amendment right to jury trial.

**B. Actions at Law and Suits in Equity**

Without pausing to consider whether issues controverted in plan-enforcement actions are questions of law or fact, courts have inquired whether these actions are "[s]uits at common law"—rather than suits in equity—within the meaning of the seventh amendment. Under present seventh amendment doctrine, a plan-enforcement action qualifies as a common law suit if it "involves rights and remedies of the sort typically enforced in an action at law."

Application of the seventh amendment's law/equity distinction requires a two-step analysis inquiring, first, whether the right asserted is analogous to a right asserted in an action at law, and, second, whether the relief demanded is analogous to relief available in an action at law. Although common law writs combined both rights and remedies into a single "form of action," distinguishing between rights and remedies is necessary to analyze the treatment of modern statutory actions, which may combine legal and equitable rights and remedies to form hybrid actions foreign to the common law.

Applying the seventh amendment to modern statutory actions thus requires consideration of the four possible ways in which rights and remedies may be paired. Analysis of these pairings suggests that a statutory action is not a suit at common law unless both the right and remedy can be classified as legal.

The first two pairings present no difficulty. A legal right enforced by a legal remedy is a pure action at law. Similarly, an equitable right enforced by an equitable remedy is a pure suit in equity.

A legal right enforced by an equitable remedy should be considered equitable because, when legal remedies were inadequate, Chancery often used equitable remedies to vindicate legal rights. A familiar example is the Chancellor's decree commanding specific performance of a contract when damages were inadequate, even though the contract right was a legal one based on the writ of assumpsit. The equitable nature of a legal right joined with an equitable remedy was illustrated in *Cur-*

*tis v. Loether* in which the Supreme Court intimated that employment discrimination suits under title VII may not be triable to a jury as of right—even though the substantive right is legal—because the remedy is equitable.

Finally, the fourth pairing—equitable right and legal remedy—should also be considered equitable for seventh amendment purposes. Historically, the rigidity of the law courts dictated that litigants bring actions of this type, such as suits for an accounting, in Chancery rather than at law. Thus, because the hybrid actions relied on Chancery's ability to supplement the rigid regime of legal rights and remedies to prevent injustice and provide complete relief, such actions should be classified as equitable. It follows that, unless both right and remedy constituting a statutorily created action are legal in nature, the seventh amendment does not grant to the litigants a right to jury trial.

1. *Legal or Equitable Right.*—Because plan-enforcement actions lie against trusts, the right embodied in these actions is, with one narrow exception, exclusively equitable. The plan-enforcement subsection of ERISA empowers beneficiaries to sue their benefit plans, which hold the beneficiaries' assets "in trust." Trusts, in turn, were creatures of equity, and their terms were enforced by the Chancellor. Plan-enforcement actions thus partake of a long equitable tradition.

The development of the trust by equity courts responded to inadequacies of both the law courts and the institution of jury trial itself. First, equity exercised jurisdiction over trusts to protect the beneficial interest of the cestui qui trust, an interest that the law courts would not recognize. Second, the interpretation of complex instruments in trust litigation required a trier of fact familiar with the nuances of the written word; because most jurors of the period could neither read nor write, jury trial would have made little sense. Third, trust litigation demanded procedures more flexible than those available in courts of law. For example, although evidence of a trustee's conduct in an undertaking as per-

sonal as a trust would be peculiarly within the knowledge of the trustee, courts of law could not hear the trustee's testimony. Furthermore, law courts arbitrarily restricted the complexity of actions in the quixotic quest for a single issue; however, the multiplicity of factors thought necessary to judge the personal conduct of trustees did not seem to be reducible to one specific yes-or-no question.

Notwithstanding the equitable origin of rights against trustees, the Supreme Court's willingness in *Ross v. Bernhard* to separate legal claims from the equitable proceedings of which such claims were component parts may suggest the availability of a jury trial in plan-enforcement actions. Derivative suits, such as the one in *Ross,* involve three actors: the shareholder, the corporation, and the directors. Even though the derivative suit was, historically, a single equitable cause of action, the Court discovered a severable legal claim in the right of the corporation to sue its directors. Once the shareholder is permitted to assert the corporation's claim, the Court held, the shareholder has a right to jury trial if the corporation's claim against the directors would have been enforced in an action at law.

Plan-enforcement actions, some might argue, also contain a severable legal action giving rise to a right to jury trial. Like the derivative suit, beneficiary suits arguably involve three actors: the beneficiary, the trust, and the trustee. Once a court has determined that the beneficiary has a right to sue the allegedly dishonest trustee on behalf of the plan, the beneficiary should have a right to jury trial if the plan's claim against the trustee would have been enforced in an action at law. Although the beneficiary is not thought to be enforcing the rights of the plan, neither was the shareholder thought to be enforcing the rights of the corporation when the derivative action was created: equity heard derivative suits because the fiduciary duty of corporate directors to shareholders is analogous to that of the trustee to the beneficiary.

The analogy between *Ross'* derivative suits and ERISA's plan-enforcement actions breaks down, however, because the trust, unlike the corporation, was not an independent entity at common law. The legal rights to trust property vested in the trustee rather than in the trust; hence the trust could have no legal claim against its trustee. The plan-enforcement action, therefore, does not contain a severable legal claim against the trustee that would give rise to a right to jury trial. Although ERISA accords the pension plan separate legal status for the purpose of bringing and defending lawsuits, it does not by its terms authorize a legal action on the part of the trust against the trustee. In fact, because Congress was concerned that ERISA's minimum standards might discourage the growth of new pension plans, the grant of separate legal status to the plan may well have been made in an effort to limit, rather than expand, the liability of the trustee.

The plaintiff's ability to sue at law for "immediate and unconditional" payment of benefits suggests another ground for claiming a constitutional right to jury trial in plan-enforcement actions. At common law, the writs of debt and general assumpsit were available to the beneficiary who was entitled to immediate and unconditional payment of benefits, because the trustee was the beneficiary's "debtor" insofar as the trustee owed a sum of money to the beneficiary.

Unfortunately, contemporary courts have had difficulty determining when these common law writs were available. As a result, the phrase "immediate and unconditional" has taken on two separate meanings. Some courts have held that a beneficiary's right is immediate and unconditional merely if "the trustee is obligated under the terms of the trust to make distribution to the beneficiaries." Under this view, any case in which the beneficiary is allegedly eligible for past benefits could be tried to a jury. Many plan-enforcement actions satisfy this low threshold because the beneficiary seeks benefits to which he claims he is currently entitled under the terms of the plan. Other courts have strictly construed

the term "unconditional" and have prohibited the beneficiary from bringing an action at law if eligibility is an issue. Under this view, a beneficiary has a right to a jury only if the trustee admits his obligation.

The limited historical availability of writs for beneficiaries (the proper reference point given the seventh amendment historical approach) favors the position taken by courts strictly construing the terms "unconditional." Chancery was responsible for the supervision of trusts, and as long as there was a question concerning the administration of the trust—including the interpretation of its terms—the writs of debt and assumpsit were unavailable. In such cases, beneficiaries could be heard only in equity. Plaintiffs in plan-enforcement actions thus bring an action analogous to one at law only if the defendant trustee admits that the plaintiff is entitled to benefits. Such actions are maintainable only in rare cases in which some collateral fact, such as the trustee's allegation that he has already paid out the trust money, must be resolved.

2. *Legal or Equitable Remedy.*—Although the beneficiary's right is legal when his entitlement is immediate and unconditional, the remedy sought must also be legal before the seventh amendment requires a jury trial. Three distinct remedies are available in plan-enforcement actions: recovery of benefits, enforcement of rights, and clarification of rights to future benefits.

Recovery of benefits is a retrospective remedy similar to compensatory damages and thus is legal in nature. Because beneficiaries ordinarily seek recovery of accrued monthly benefits rather than restoration of past pension contributions, the award of benefits differs from equitable restitution, which might merely refund the beneficiary's past contributions to the pension plan. Therefore, a beneficiary asking for accrued monthly benefits seeks a legal remedy.

The other two remedies available in plan-enforcement actions provide prospective relief by permitting beneficiaries to request clarification of their rights to future benefits and, in extreme cases, to seek affirmative injunctions compelling payment of future benefits. Because these remedies relate to payment of future benefits, the common law writs providing a legal remedy for payments immediately due would not have been available. Instead, both of these remedies find their analogues in equity and therefore must be classified as equitable remedies for seventh amendment purposes. The injunctive remedy is clearly equitable; a prospective injunction was not available at law in 1791.

The legal or equitable nature of the clarification remedy may be determined through analysis parallel to that used in actions seeking relief under the Declaratory Judgment Act. Both mechanisms are statutory creations that are neither legal nor equitable on their face. Courts have found actions under the Declaratory Judgment Act to be equitable if such actions have a counterpart in equity, but legal if the suit is an inverted law suit in which the declaratory plaintiff would have been the defendant at common law.

Under this analysis, ERISA's clarification remedy is equitable: the issue of the beneficiary's right to future benefits could have arisen only in equity. Absent the clarification remedy, the issue of the beneficiary's right to future benefits would have arisen as a component of a suit seeking a mandatory injunction compelling a trustee to pay benefits in the future. The clarification remedy is merely a less drastic, statutorily created alternative to injunctive relief. Because the beneficiary's right to future benefits would thus have been heard in equity absent the clarification provision, the clarification remedy is equitable and not triable to a jury.

Nor can it be claimed that a plan-enforcement action in which a beneficiary seeks clarification of future benefit rights is an inverted law suit. The only possible claim the trustee has against the beneficiary is a claim for a declaration of nonliability under the trust. But eighteenth century law courts could not give such declarations. Moreover, interpretation of the trust instrument, an interpretation that a declara-

tion of nonliability would require, was the sole responsibility of Chancery.

A special problem arises because the three remedies available in plan-enforcement actions may be sought simultaneously. Beneficiaries may pray both for recovery of past due benefits and for clarification or enforcement of their right to future benefits. In theory, the beneficiary's equitable claim for prospective relief does not eliminate the right to jury trial on his legal claim for immediate and unconditional payment of past benefits. Instead, both beneficiary and trustee may demand jury trial on all issues common to those raised by the legal claim for immediate and unconditional monetary payments. As a practical matter, however, remedies cannot be sought concurrently as a strategem to put the issue of eligibility to the jury; the trustee must admit his obligation to the beneficiary for the seventh amendment to grant a jury trial in the first place.

A beneficiary's suit thus is not legal and triable to a jury unless at least one claim is composed of a legal right coupled with a legal remedy. Such a pairing of legal right and remedy occurs in the plan-enforcement actions only if there is no question of the beneficiary's entitlement to benefits and if one remedy sought is recovery of benefits past due.

### CONCLUSION

In determining whether to strike a jury demand in plan-enforcement actions brought under section 502(a)(1)(B) of ERISA, courts have attempted to wring from congressional silence a legislative intention with regard to the right to jury trial. Yet neither the text of ERISA, the enforcement scheme it has constructed, nor the history of its passage suggests a particular mode of trial. Beneficiaries thus have no right to a jury in plan-enforcement actions unless that right is guaranteed by the seventh amendment.

The seventh amendment guarantees a jury trial on issues that would have been tried to a jury by English law courts in 1791. At common law, only questions of fact were tried to the jury; questions of law were not so tried. Plan-enforcement actions, however, do not ordinarily raise questions of fact, because such actions merely enforce "the terms of the [pension] plan" and courts will not disturb the trustee's interpretation unless it is erroneous as a matter of law. Thus, the seventh amendment does not provide a right to jury trial if interpretation of pension provisions is all that is at issue. Surprisingly, many courts have ignored the law/fact distinction and instead have proceeded to determine whether plan-enforcement actions would have been brought at law or in equity in eighteenth century England.

The seventh amendment guarantees a jury trial only if both right and remedy are legal. Because trusts were the peculiar concern of the Chancellor, the right in plan-enforcement actions is generally equitable. Only if the trustee admitted his obligation to the beneficiary could the beneficiary have brought an action at law. Even then, a beneficiary would have a right to a jury trial only if he asks for the one legal remedy that plan-enforcement actions provide— the recovery of benefits past due. The other two remedies available in plan-enforcement actions—clarification of the right to future benefits and enforcement of the terms of the pension plan—are both equitable and do not give rise to a right to jury trial. The enforcement remedy is in essence an affirmative injunction in disguise, and the clarification remedy embodies the declarative force of an injunction without the immediate threat of contempt for violation of the decree. Both the declarative and injunctive functions were exclusively within the domain of courts of equity at the time of ratification of the seventh amendment. Therefore, jury trial is unavailable in actions under section 502(a)(1)(B) of ERISA except in that narrow class of cases in which there are no questions of trust administration—that is, cases in which the trustee admits his currently due monetary obligation to the beneficiary.

96 Harvard Law Review, 743–57.

Since this 1983 Harvard Law Review article and since the *Howard v. Parisian,*

*Inc., dictum,* the Supreme Court decided *Tull v. United States,* — U.S. —, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987). *Tull* is the final word on the subject at hand and is controlling. The Supreme Court pulled no punches in its *unanimous* sense of the critical importance of the Seventh Amendment to our scheme of justice. It uses the following powerful and pointed language:

The Seventh Amendment provides that, "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved...." [3] The Court has construed this language to require a jury trial on the merits in those actions that are analogous to "Suits at common law." Prior to the Amendment's adoption, a jury trial was customary in suits brought in the English *law* courts. In contrast, those actions that are analogous to 18th–century cases tried in courts of equity or admiralty do not require a jury trial. See *Parsons v. Bedford,* 3 Pet. 433 [7 L.Ed. 732] (1830). This anaylsis applies not only to common law forms of action, but also to causes of action created by congressional enactment. See *Curtis v. Loether,* 415 U.S. 189, 193, 94 S.Ct. 1005, 1007, 39 L.Ed.2d 260 (1974).

To determine whether a statutory action is more similar to cases that were tried in courts of law than to suits tried in courts of equity or admiralty, the Court must examine both the nature of the action and of the remedy sought. First, we compare the statutory action to 18th–century actions brought in the courts of England prior to the merger of the courts of law and equity. See, *e.g., Pernell v. Southall Realty,* 416 U.S. 363, 378, 94 S.Ct. 1723, 1731, 40 L.Ed.2d 198 (1974); *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 477, 82 S.Ct. 894, 899, 8 L.Ed.2d 44 (1962). Second, we examine the remedy sought and determine whether it is legal or equitable in nature. See, *e.g., Curtis v. Loether,* 415 U.S., at 196, 94 S.Ct., at 1009; *Ross v. Bernhard,* 396 U.S. 531, 542, 90 S.Ct. 733, 740, 24 L.Ed. 2d 729 (1970).[4]

[3] Before initiating the inquiry into the applicability of the Seventh Amendment, "[w]e recognize, of course, the 'cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the [constitutional] question may be avoided.'" *Curtis v. Loether,* 415 U.S. 189, 192, n. 6, 94 S.Ct. 1005, 1007, n. 6, 39 L.Ed.2d 260 (1974) (citation omitted); see also *Pernell v. Southall Realty,* 416 U.S. 363, 365, 94 S.Ct. 1723, 1724, 40 L.Ed.2d 198 (1974). Nothing in the language of the Clean Water Act or its legislative history implies any congressional intent to grant defendants the right of a jury trial during the liability or penalty phase of the civil suit proceedings. Given this statutory silence, we must answer the constitutional question presented.

[4] The Court has also considered the practical limitations of a jury trial and its functional compatibility with proceedings outside of traditional courts of law in holding that the Seventh Amendment is not applicable to administrative proceedings. See, *e.g., Atlas Roofing Co. v. Occupational Safety and Health Review Comm'n,* 430 U.S. 442, 454, 97 S.Ct. 1261, 1268, 51 L.Ed. 2d 464 (1977); *Pernell v. Southall Realty, supra,* 416 U.S., at 383, 94 S.Ct., at 1733). But the Court has not used these considerations as an independent basis for extending the right to a jury trial under the Seventh Amendment.

107 S.Ct. at 1835.

The various state workmen's compensation statutes are suggested by one of these defendants to constitute an example of constitutional legislation which specifically provides for non-jury dispute resolution. There are reasons why this example is unpersuasive. First, this apparent Seventh Amendment aberration may not be an aberration, because there was nothing remotely similar to workmen's compensation at common law. More importantly, the concept of workmen's compensation evolved before the doctrine of incorporation of the Bill of Rights as binding on the states through the Fourteenth Amendment had been fully developed by the Supreme Court so as to include the Seventh Amendment.

■ It would be an unforgiveable irony for an Alabama court to afford an ERISA plaintiff a jury trial at the same time a federal court denies plaintiff a jury trial in an identical case. While ERISA preempts state law claims, *it does not preclude concurrent state court jurisdiction over ERISA actions.* As yet neither Congress nor any federal court has instructed any state court that it may not try an ERISA

dispute with a jury. Because this court finds that as to legal remedies ERISA litigants are entitled to a jury trial in a federal court, this possible irony need not be dealt with.

## CONCLUSION

In these three cases none of the plaintiffs presently seeks any relief which can fairly be characterized as "equitable." At present, then, the court need not decide, and therefore does not decide, the extent and variety of the relief allowable under ERISA nor what forms of relief might require a non-jury determination. The only decision being made at this time is the right of these plaintiffs to a jury for the trial of one or more of their issues. By separate order, defendants' back-to-back motions to strike plaintiff's jury demands will be overruled.

## SUPPLEMENTARY
## MEMORANDUM OPINION

■ When this court entered its memorandum opinion on December 4, 1987, and the accompanying order, it recognized that it might be swimming upstream, but it did not know that it was being engulfed in the tidal wave of *Chilton v. Savannah Foods & Industries, Inc.*, 814 F.2d 620 (11th Cir. 1987), decided by the Eleventh Circuit on a non-argument calendar on April 13, 1987, three months after *Howard v. Parisian, Inc.*, 807 F.2d 1560 (11th Cir.1987), was decided on January 20, 1987. Not only did none of the parties in any of the three above-entitled actions direct this court's attention to *Chilton*, but this court failed to conduct the research necessary to find *Chilton* himself. *Chilton* leaves *Howard v. Parisian, Inc.*, way behind. *Chilton* contains a clear holding, not *dictum*, constituting the law of the Eleventh Circuit, on the subject of jury trials in ERISA cases. In *Chilton* the claim, for which jury trial was denied, was, for aught appearing, of the traditional legal variety. The *Chilton* court said:

Chilton's next argument is that the district court erred by striking his demand for a jury trial. He cites *Calamia*

*v. Spivey*, 632 F.2d 1235 (5th Cir.1980), for the proposition that Congress intended 29 U.S.C. sec. 1132(a)(1) to create legal rights that would entitle plaintiffs to a jury trial. The holding in *Calamia*, however, was exactly the opposite. The *Calamia* court did consider *Stamps v. Michigan Teamsters Joint Council 43*, 431 F.Supp. 745 (E.D.Mich.1977), which held that plaintiffs under that section of ERISA are entitled to a jury trial; but the *Calamia* court then joined the Seventh Circuit in rejecting the reasoning of *Stamps. Calamia*, 632 F.2d at 1237. Because *Calamia* is binding precedent, the law of this circuit is settled: Chilton was not entitled to a jury trial.

814 F.2d at 623 (footnote omitted).

It is embarrassing for this court to have to do a 180-degree turn, but this court will not presume to ignore the Eleventh Circuit's flat holding in *Chilton*, suddenly discovered and upon which the ink is hardly dry.

Instead of gratuitously writing this *mea culpa* addendum to its opinion of December 4, 1987, the court could have asked the parties to submit briefs on the significance of *Chilton*, something that they should have done in the first place, but the court can find no way to read *Chilton* except for the proposition that in the three states making up the Eleventh Circuit there is at present no jury trial whatsoever in ERISA cases. Shepherdizing *Howard v. Parisian, Inc.*, did not reveal *Chilton*, because *Chilton* did not cite *Howard v. Parisian, Inc.* This, of course, is no excuse for the court's not finding *Chilton* by the other methods available, and for blithely assuming on December 4, 1987, that *Howard v. Parisian, Inc.* was the last word from the Eleventh Circuit on the subject.

Neither is this court willing to stick with its opinion of December 4, 1987, by hanging its hat on *Tull v. United States*, —— U.S. ——, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987), which was discussed neither in *Howard v. Parisian, Inc.* nor in *Chilton*. *Tull* could not have been addressed in *Howard v. Parisian, Inc.* nor in *Chilton* because *Tull* had not been decided by the

Supreme Court when they were decided. *Tull* was not decided until April 28, 1987. *Tull* dealt expressly with the Seventh Amendment, something which neither *Howard v. Parisian, Inc.* nor *Chilton* did, but *Tull* did not deal with the Seventh Amendment *in the ERISA context.* This fact leaves the court with an intriguing choice between following the latest pronouncement by the Eleventh Circuit on jury trials *in ERISA cases* and the later, powerful pronouncement by the Supreme Court itself on the the Seventh Amendment requirement of jury availability in statutory actions where Congress did not specifically preclude trial by jury. This court, with some hesitation, chooses *Chilton* over *Tull,* at least for these cases, as binding upon this court.

This court's opinion of December 4, 1987, makes clear this court's firm, personal belief in the supremacy of the Seventh Amendment over any implication against jury trial derived simply from congressional silence in a federal statute creating a new cause of action. The Eleventh Circuit either has not yet been called upon to address, or has not addressed, the Seventh Amendment when comparing ERISA claims which are kin to traditional common law claims and ERISA claims which are like those formerly dealt with by the chancellor.

After this court entered its questionable opinion of December 4, 1987, this court not only learned of *Chilton* but found *Turner v. Leesona Corporation,* 673 F.Supp. 67 (D.R.I.1987), in which Judge Pettine substantially agreed with this court. Judge Pettine's opinion is very well-written. It holds, *inter alia:*

> That the statute does not expressly provide for jury trials does not end the inquiry. Legislative intent, if discernible, must be consulted. *Pernell v. Southall Realty,* 416 U.S. 363, 366, 94 S.Ct. 1723, 1725, 40 L.Ed.2d 198 (1974). If that reveals no ready answer, the question is whether the rights and remedies created are the type traditionally enforced in an action at law or equity.

*Curtis v. Loether,* 415 U.S. 189, 195, 94 S.Ct. 1005, 1009, 39 L.Ed.2d 260 (1974).

673 F.Supp. at 69.

\* \* \* \* \* \*

> It is noteworthy that the reticence reflected in the Conference Report is not shared by the House and Senate Reports. Both indicate, in identical language, that "[t]he intent of the Committee is to provide the full range of legal and equitable remedies available in both state and federal courts." H.Rep. No. 93–533, 93d Cong., 2d Sess. (1974), reprinted in 1974 U.S.Code Cong. & Ad.News 4639, 4655; S.Rep. No. 93–127, 93d Cong. 2d Sess. (1974), reprinted in 1974 U.S.Code Cong. & Ad.News 4838, 4871.

> A review of the structure of the enforcement provisions as well as the legislative materials accompanying the statute's passage indicate that Congress simply did not decide the matter. The possibility of jury trials, though not accepted, was, it seems, not rejected either. In light of this congressional neutrality, the rights and remedies created by the state determine whether a jury trial is available.

673 F.Supp. at 70.

\* \* \* \* \* \*

> Except in a small category of cases, the remedies of a beneficiary against a trustee are exclusively equitable. Restatement (Second) of Trusts 197 (1959). This would preclude jury trials in all ERISA actions. There is, however, one exception. If the trustee is "under a duty to pay money immediately and unconditionally to the beneficiary, the beneficiary can maintain an action at law against the trustee to enforce payment." *Id.* at 198.

> The contours of this action at law, a descendant of the common law writs of debt and general assumpsit, *id.* at comment b, are far from clear. Some cases suggest that such a claim is available "once the beneficiaries have a vested right to payment or when the trustee is obligated under the terms of the trust to make a distribution to the beneficiaries." *See Dixon v. Northwestern National*

*Bank,* 297 F.Supp. 485, 489 (D.Minn. 1969); *Jefferson National Bank of Miami Beach v. Central National Bank in Chicago,* 700 F.2d 1143, 1149 (7th Cir. 1983). These cases distinguish between actions to compel the trustee to redress a breach of trust by replenishing the trust corpus, which are equitable, and actions for payment on an indebtedness arising out of a breach of trust, which are legal. *Jefferson National Bank of Miami Beach,* 700 F.2d at 1149....

Because I interpret the exception to apply only when the trustee concedes eligibility but refuses, for some collateral reason, to distribute benefits, I perceive plaintiff's claim as falling on the equitable rather than the legal side of the divide.

673 F.Supp. at 70.

Judge Pettine makes the distinction between a suit for benefits which does not involve an interpretation of a trustee's duties or a determination of whether or not the trustee exceeded his authority or discretion or a determination of whether or not the trustee breached his fiduciary obligation, and a contract claim for benefits presently due and owing. The problem of distinguishing between these two categories in each case is either a problem impossible to solve, or one not easy to solve, because somebody has to decide whether or not the benefits are presently due and owing, and if there is no dispute about it the plaintiff-beneficiary should easily obtain his requested relief under Rule 56, F.R.Civ.P. The plaintiff in such a case would never see the jury he had demanded. If the court reads their complaints correctly, Whitt, Amos and Eitel do not now purport to seek an interpretation of a trust instrument or a review of some exercise of a trustee's discretion, nor do they claim a breach of a trustee's fiduciary obligation, that is, unless every claim for monies allegedly due under an ERISA-controlled contract involves one or more of these "trust" or "equitable" doctrines.

If Whitt, Amos or Eitel, or any combination of them, should still believe that this court was correct on December 4, 1987,

despite *Chilton,* and should wish to attempt an appeal to the Eleventh Circuit under 28 U.S.C. § 1292(b), this court will provide that opportunity upon request.