Harley AMOS, et al., Plaintiffs,

v.

BLUE CROSS–BLUE SHIELD OF ALABAMA, et al., Defendants.

Civ. A. No. 87–AR–1644–M.

United States District Court,
N.D. Alabama, M.D.

March 22, 1988.

Daniel B. King, Robert H. King, Sr., King & King, Gadsden, Ala., for plaintiffs.

Lawrence B. Clark, Sally S. Reilly, Lange, Simpson, Robinson & Somerville, Birmingham, Ala., for defendants.

## MEMORANDUM OPINION

ACKER, District Judge.

Defendants, Blue Cross–Blue Shield of Alabama and Jan Cullighan (Blue Cross), have moved for a reconsideration of this court's ruling of December 30, 1987, which held that the pendent state law claims of plaintiffs, Harley Amos and Gail Amos, continue as viable ERISA claims, by absorption, as a consequence of the Eleventh Circuit's opinion in *Belasco v. W.K.P. Wilson and Sons, Inc.*, 833 F.2d 277 (11th Cir.1987), decided on December 2, 1987, by a panel consisting of Judges Hill, Hatchett and Thomas. Blue Cross now cites, with understandable relish, *Bishop v. Osborn Transportation, Inc.*, 838 F.2d 1173 (11th Cir.1988), decided on March 1, 1988. In *Bishop*, this very court was affirmed by an Eleventh Circuit panel consisting of Judges Hill, Fay and Hatchett, who there deduced, despite the deliberately equivocal opinion of the Supreme Court in *Massachusetts Mutual Ins. Co. v. Russell*, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), that punitive and other extracontractual damages cannot be recovered under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132(a) (ERISA), thus apparently solving the problem, as far as the Eleventh Circuit is concerned, which had been reserved in *Howard v. Parisian, Inc.*, 807 F.2d 1560, 1565 (11th Cir.1987).

In its motion for reconsideration, Blue Cross makes very clear its position that "plaintiff is not entitled to damages beyond the benefits to which he may be entitled under the employee welfare benefit plan of which he is a participant." In its brief Blue Cross also makes clear its further position that a trustee or plan administrator cannot even be held liable for *benefits* unless his decision to turn down a claim is "arbitrary and capricious," i.e., totally irrational or in bad faith.

The question to be revisited here concerns the extent to which the national public policy enacted in ERISA narrows the exposure of the trustees of welfare benefits funds and plan administrators. Does it close the door against all meritorious tort-type claims by plan beneficiaries? If the recognized purpose of ERISA was to *protect* beneficiaries, will this "new dispensation," by judicial construction, take away all of the effective traditional remedies of the beneficiaries? Would Blue Cross carry its argument so far as to suggest that ERISA wipes out a plan beneficiary's state

tort claim arising out of his administrator's running over him with a truck in his driveway while attempting to deliver a benefit check? This activity would be *directly related to the administration of the plan.* It very arguably comes within the "supersedure" of 29 U.S.C. § 1144(a). Where is the line to be drawn?

It is provocative to note that there is now a petition on this subject pending in the Supreme Court for certiorari to the Third Circuit in *Continental Group, Inc. v. McLendon,* No. 87–911 (3rd Cir.1987), decided by the Third Circuit on November 11, 1987. In *Continental Group,* the Third Circuit dealt with the serious problem of preserving a party's constitutional right to jury trial in an action which combines legal and equitable claims, certain of them admittedly being ERISA claims. The law as to the breadth of ERISA preemption and as to the right to jury trial in ERISA or ERISA-related claims remains highly volatile, conflicting and undefined. For instance, in *Schlenz v. United Airlines,* 678 F.Supp. 230 (N.D.Cal.1988), decided as recently as January 19, 1988, Judge Henderson found that a former employee's pendent state law claims for wrongful discharge and breach of contract against his employer are not preempted by ERISA. *See also Hickman v. Tosco Corp.,* 840 F.2d 564, (8th Cir.1988). These decisions square with this court's reading of *Belasco,* although the rationale is different. In *Schultz v. National Coalition of Hispanic Mental Health & Human Services,* 678 F.Supp. 936, (D.D.C.1988), decided on February 11, 1988, Judge Richey held that a former employee's action for fringe benefits lost when plaintiff allegedly was illegally terminated, does not create a ground for ERISA preemption of the employee's state law discrimination claim. Again, *Schultz* can be reconciled with *Belasco* by recognizing that the two courts arrived at the same result by using different semantic routes. Both routes leave the court door ajar for remedies beyond mere plan benefits.

The fact that all other remedial doors are not closed by ERISA is again illustrated by *Fort Halifax Packing Co. v. Coyne,* —

U.S. ——, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987), in which a divided Supreme Court decided that the enforcement of a particular law of Maine, although it directly involved employment benefits in the context of severance pay, is not preempted by ERISA, because it does not "relate to any employee benefit plan." 29 U.S.C. § 1144(a). The majority expanded this rationale by articulating several reasons why Maine's cause of action is not precluded by ERISA. Without here repeating these reasons, several of them could well be used to characterize the state law claims which were originally presented by Mr. and Mrs. Amos and are now "converted."

If ERISA was congressionally designed to eliminate any and all causes of action against pension trustees and plan administrators not expressly found within the four corners of ERISA, not only are overlapping state claims precluded but a federal cause of action under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–634, even though arising out of many of the same operative facts, if "related to any employee benefit plan," would be precluded. How exclusive did Congress intend for ERISA to be?

Blue Cross likes the sound of *Rasmussen v. Metropolitan Life Ins.,* 676 F.Supp. 1360 (W.D.La.1988), decided on January 21, 1988, in which Judge Stagg stated the extreme belief that not only does ERISA preempt (in the sense of "eliminate") all state law claims but that a plan beneficiary cannot even go to court to invoke ERISA by claiming that the administrator was "arbitrary and capricious" until he has exhausted all administrative remedies provided by his plan. Other courts have held the same thing. The looming possibility of having to submit to the binding arbitration of an already tightly circumscribed ERISA claim (limited, if Blue Cross is correct, to a bare claim for benefits), is again suggested by *Printing Specialty Local 680 v. Nabisco Brands,* 833 F.2d 102 (7th Cir.1987). *Printing Specialty* necessarily implies that if a pension plan contains a provision requiring binding arbitration, resort to court is forever precluded unless there is some

way to attack the arbitrator's finding. In other words, if Blue Cross can take the step of "preempting" all state law claims in the sense of "eliminating them entirely," as contrasted with the *Belasco* sense of "converting them into ERISA claims," then Blue Cross would no doubt want to take the next logical step and introduce into its various plans a binding arbitration provision. It would be ironic, indeed, for a beneficiary who becomes the victim of monumental fraud or of classically abusive behavior by a plan administrator not only to be limited to a recovery of benefits clearly due under the terms of his contract (with all ambiguities to be resolved in favor of the administrator), but if the plan requires it, to submit the issue of whether or not the administrator was "arbitrary and capricious" to binding arbitration, thus, as a practical matter, eliminating entirely the beneficiary's access to court. From the point of view of reducing this court's case load, this scenario would produce a highly desirable result. It would be the reverse bootstrap working at its best.

A puzzle is presented by the fact that *Bishop*, decided on March 1, 1988, makes no mention of *Belasco*, decided on December 2, 1987. Therefore, *Bishop* does not attempt to distinguish *Belasco* or to reconcile the two expressions on the same subject only three months apart. If the two panels had not contained two of the same judges, this court might reason that the *Bishop* court was unaware of the *Belasco* decision, but the fact that two of the same judges participated in both decisions makes this reasoning impossible. The matter is further complicated by the fact that on February 24, 1988, Judges Tjoflat and Edmondson, in the instant case, denied Blue Cross' application for an interlocutory appeal from this court's order of December 30, 1987, which recited this court's interpretation of *Belasco*, as follows:

> This court finds it impossible to read this language [*Belasco*, p. 281–82] spoken less than a month ago by the Eleventh Circuit for anything except what it literally means, namely that while ERISA *does* preempt state tort claims it effects that preemption not by *eliminating* the

state tort claims but by *absorbing* them and allowing them to proceed as federal claims, either as matters of federal common law or as matters within the contemplation of the ERISA statutory language. *Belasco* answers the question reserved in *Howard v. Parisian, Inc.,* 807 F.2d 1560, 1565 (11th Cir.1987).

By denying the interlocutory appeal, were Judges Tjoflat and Edmondson postponing the Eleventh Circuit's addressing of the meaning of *Belasco*, or were they suggesting agreement with this court's reading of *Belasco?* At the time this court spoke on December 30, 1987, *Bishop* had not been decided. *Bishop* was still around the corner. The question is: Does *Bishop* call upon this court to alter its interpretation of *Belasco?*

If there is a logical way for a lower court to reconcile arguably contradictory expressions by a binding appellate court, the lower court certainly has a duty to do so. This court, therefore, now undertakes to prevent *Bishop* from contradicting *Belasco.*

In *Bishop*, the plaintiff sought punitive or extracontractual damages under ERISA. The Eleventh Circuit was not asked in *Bishop* to rule on the question of preemption of state law claims. Therefore, it had no reason to discuss the possible metamorphosis of the ugly-caterpillar-state-law-claims, a la *Belasco*, into beautiful-butterfly-ERISA-claims. The discussion in *Bishop* centered exclusively around the ERISA relief includable as "other appropriate equitable relief" under 29 U.S.C. § 1132. If a pendent state tort claim for a fraud perpetrated by a plan administrator or trustee, or a state tort claim for a bad faith refusal to pay a clearly due claim, is "converted" into a federal question by ERISA "preemption," as the Eleventh Circuit defined "preemption" in *Belasco*, 833 F.2d 282, this "conversion" is meaningless if the beneficiary can recover no more than what he could recover by way of the benefits clearly due by contract. This court thus can only conclude that *Bishop* was decided on the narrow basis that the plaintiff there only presented the question of the definition of "other appropriate equitable relief,"

and did not seek to enjoy the opening afforded by *Belasco*, because he did not know about *Belasco* and did not anticipate *Belasco*. This court knows that it had not anticipated *Belasco* when, as the lower court, it ruled in *Bishop*.

Blue Cross argues that when the Eleventh Circuit in *Belasco* announced that "ERISA pre-emption converts the related [state] claim into a federal question," 833 F.2d at 282, the Eleventh Circuit inserted by implication the additional words "for the limited purpose of ascertaining whether or not 'federal question' removal jurisdiction exists." Blue Cross argues that this is the only interpretation of *Belasco* consistent with the Eleventh Circuit's denial of the right to jury trial in all ERISA cases and consistent with the denial of punitive damages in *Bishop*. *See Whitt v. Goodyear Tire & Rubber Co.*, 676 F.Supp. 1119 (N.D. Ala.1987), for this court's feelings on the subject of jury trial in ERISA cases. In order to understand *Belasco*, it must be remembered that *Belasco* began just as the instant case began, with a complaint being filed in an Alabama state court alleging, *inter alia*, "bad faith" and "fraud." 833 F.2d at 279. If the panel in *Belasco* had only meant that these two garden variety state tort claims are reduced in size or limited to a recovery of the plan benefits contractually due, as is here urged by Blue Cross, the panel would surely have made clear such intention. Instead, the Eleventh Circuit said that these state torts of "bad faith" and "fraud" had been "converted" by ERISA into federal claims. Nowhere did the Court say or imply that this "conversion" was less than total. This court is forced to take the Eleventh Circuit's opinion in *Belasco* at face value and to construe it under the rules of English grammar. If the Eleventh Circuit ultimately chooses to agree with Blue Cross, instead of agreeing, in substance and effect, with what the several other courts above cited have recently held, the Eleventh Circuit will, of course, do so when the opportunity presents itself, whether in this case or some other case.

For the present, this court is unwilling to adopt Blue Cross' means for reconciling *Belasco* and *Bishop*. Instead, this court prefers the means of reconciliation above employed. It remains to be seen, of course, which means of reconciliation is correct.

Blue Cross' motion for reconsideration will be denied by separate order, and the Amos' former state law claims, now having become ERISA claims, although not entitling plaintiffs to trial by jury because of *Chilton v. Savannah Foods & Industries, Inc.*, 814 F.2d 620 (11th Cir.1987), will be tried as ERISA claims with a possibility of punitive damages. This court is not unaware of the anomaly arising from the decision of the Supreme Court of Alabama (without considering *Belasco* or *Bishop*) when that court recently held that punitive and extracontractual damages are not recoverable under ERISA. *Hood v. Prudential Insurance Co. of America*, 522 So.2d 265 (1988). Potentially, the Amos' *former* state tort claims, now ERISA claims, will call for the imposition of punitive damages despite the fact that according to *Bishop*, ERISA itself, as distinct from state claims converted by ERISA, does not authorize punitive damages.