**Phillip N. RHODES, Plaintiff,**

v.

**PIGGLY WIGGLY ALABAMA DISTRIBUTING COMPANY, INC., et al., Defendants.**

**Civ. A. No. 90–AR–0839–S.**

United States District Court,
N.D. Alabama, S.D.

Aug. 1, 1990.

James E. Vann, Birmingham, Ala., for Phillip N. Rhodes.

Mark L. Taliaferro, Jr., A. Brand Walton, Jr., Dent Miller Morton, Burr & Forman, Birmingham, Ala., for Piggly Wiggly Alabama Distributing Co., Inc.

MEMORANDUM OPINION

ACKER, District Judge.

Defendants, Piggly Wiggly Alabama Distributing Company, Inc., and Health Benefit Plan for the Employees of Piggly Wiggly Alabama Distributing Company, Inc., have filed a motion to strike the jury demand which plaintiff, Phillip N. Rhodes, filed with his action brought pursuant to § 502(a)(1) of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a)(1). This is a relatively simple and straightforward claim by an employee beneficiary under an ERISA employee benefit plan for benefits allegedly due him. Thus, if *Chilton v. Savannah Foods and Industries*, 814 F.2d 620 (11th Cir.1987), still represents the law of the Eleventh Circuit, defendants' motion to strike the jury demand should be granted. If, however, the net effect of Supreme Court decisions after *Chilton* is to recognize the right of jury trial in ERISA claims for benefits due, the motion should be denied.

■ In *Whitt v. Goodyear Tire & Rubber Co.*, 676 F.Supp. 1119 (N.D.Ala.1987), this court discussed the Seventh Amendment and ERISA at some length, and in the end only reluctantly turned from its original intention to grant a jury trial in order not to deviate from the then very recent opinion of the Eleventh Circuit in *Chilton* which recognized no jury trial in ERISA cases. It is what has happened to Seventh Amendment jurisprudence since *Whitt* and *Chilton* that causes this court to conclude today that the law now is what this court and other courts predicted it would be. *See Whitt* and *Springer v. Wal–Mart Associates' Health Plan*, 714 F.Supp. 1168, 1169 (N.D.Ala.1989).

It is unnecessary to repeat this court's arguments in *Whitt*, arguments to which it now re-subscribes. Furthermore, this court has thoroughly expounded its reading of the Supreme Court's post-*Chilton* decisions bearing on the availability of a jury trial in an action invoking a Congressional enactment not containing any provision for trial by jury and seeking relief which is not traditionally equitable. *See Beesley v. The Hartford Fire Insurance Company*, 717 F.Supp. 781 (N.D.Ala.1989), *reconsidered at* 723 F.Supp. 635 (N.D.Ala.1989); *Walton v. Cowin Equipment Co., Inc.*, 733 F.Supp. 327 (N.D.Ala.1990); and *Walker v. Anderson Elec. Connectors*, 736 F.Supp. 253 (N.D.Ala.1990).

Since this court wrote *Whitt* in 1987, other courts began to recognize trial by jury in ERISA benefit cases brought under 29 U.S.C. § 1132(a)(1). In 1988, the Third Circuit acknowledged the difference between the relief provided in 29 U.S.C. § 1132(a)(1)(B), which is "legal," and the relief provided in 29 U.S.C. § 1132(a)(3)(A) or (B), which is "equitable." *Cox v. Keystone Carbon Co.*, 861 F.2d 390 (3d Cir. 1988) (citing *Tull v. United States*, 481 U.S. 412, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987)). It remanded the case to the district court to determine whether or not the case was a simple suit under § 1132(a)(1)(B) "to recover benefits due under the plan" and thus carried a jury entitlement. *Id.; see also Abbarno v. Carborundum Co.*, 682 F.Supp. 179 (W.D.N.Y. 1988); *Gangitano v. Investors Life Insurance Co.*, 733 F.Supp. 342 (S.D.Fla.1990); *Vicinanzo v. Bruschwig & Fils, Inc.*, 739 F.Supp. 882 (S.D.N.Y.1990); and *Porter v. Mutual Service Life Insurance Company, et al.*, CV 90–PT–700–S (N.D.Ala. June 26, 1990). The courts which entered these recent decisions and arrived at the conclusion that certain ERISA claims carry the Seventh Amendment right to jury trial, employed the same authorities which this court employed in *Whitt, Beesley, Walton* and *Walker,* except for *Yellow Freight System v. Donnelly*, —— U.S. ——, 110 S.Ct. 1566, 108 L.Ed.2d 834 (1990), which was discussed only in *Walker* and in which the Supreme Court recognized for the first time that state courts have concurrent jurisdiction in Title VII cases. Even before *Yellow Freight* no one doubted that state courts have concurrent jurisdiction over claims for ERISA plan benefits under 29 U.S.C. § 1132(a)(1)(B). Thus, if a state court allows trial by jury in such ERISA cases, under the rationale of *Yellow Freight* can a jury trial be denied by a federal court in an identical case?

This court is particularly persuaded by the following penetrating observation by Chief Judge Brieant in *Vicinanzo:*

> Perhaps because the right to a jury trial on claims of legal entitlement is so obvious, ERISA makes no express provisions for jury trials ...

739 F.Supp. at 885.

How can the right to a jury trial be so obvious to Judge Brieant and to this court when so many courts have scoffed at the idea of jury trial in causes of action created by a statute that is silent on the subject? This is a hard question. The answer probably lies not only in the judiciary's too often eagerness to do "what is right and necessary," but also in the judiciary's general lack of understanding of the crucial significance of the Seventh Amendment to the adoption of the Constitution.

It is universally understood that the Constitution of the United States would never have been ratified without the contemporaneous inclusion of its first ten amendments, including the Seventh Amendment. Perhaps it is not as well understood that the Federal Rules of Civil Procedure probably would not have been adopted without the inclusion of Rule 38(a), which clearly affirms the Seventh Amendment's guarantee of a trial by jury in matters involving a claim of legal entitlement. Ancient history may be more interesting than current events.

In England before the American Revolution, as well as in the thirteen colonies, the meaning of the term "jury trial" included not only the right of the jurors to determine where the truth lies but also the right to ignore the law as explained by the judge if the jurors should be persuaded to adopt other guidelines for decision. The great debate between the Federalists and the Anti–Federalists, leading ultimately to the incorporation of the Bill of Rights into the Constitution, included specific reference to the crucial importance of *civil* jury trials. The following Anti–Federalist criticism and expression of the American fear of trial-by-judge is found in an Anti–Federalist essay of 1787 entitled, "Observations Leading to a Fair Examination of the System of Government Proposed by the Late Convention: And to Several Essential and Necessary Alterations in It":

> By art. 3 sect. 1, the judicial power of the United States shall be vested in one supreme court, and in such inferior courts, as congress may, from time to time, ordain and establish—the judges of them to hold their offices during good behaviour, and to receive, at stated times, a compensation for their services, which shall not be diminished during their continuance in office: but which, I conceive, may be increased. By the same art. sect. 2, the supreme court shall have original jurisdiction, "in all cases affecting ambassadors, and other public ministers, and consuls, and those in which a state shall be a party, and appellate jurisdiction, *both as to law and fact,* in all other federal causes, with such exceptions, and under such regulations, as the congress shall make." By the same section, the judicial power shall extend in law and equity to all the federal cases therein enumerated. By the same section the jury trial, in criminal causes, except in cases of impeachment, is established; but not in civil causes ...
>
> \*    \*    \*    \*    \*    \*
>
> Their [the jury's] right to determine as to facts will not be disputed and their right to give a general verdict has never been disputed, except by a few judges and lawyers, governed by despotic principles. Coke, Hale, Holt, Blackstone, DeLome, and almost every other legal or political writer, who has written on the subject, has uniformly asserted this essential and important right of the jury. Juries in Great–Britain and America have universally practised accordingly. Even Mansfield, with all his wishes about him, dare not directly avow the contrary. What fully confirms this point is, that there is no instance to be found, where a jury was ever punished for finding a general verdict, when a special one might, with propriety, have been found. The jury trial, especially politically considered, is by far the most important feature in the judicial department in a free country, and

the right in question is far the most valuable part, and the last that ought to be yielded, of this trial. (footnote omitted). Juries are constantly and frequently drawn from the body of the people, and freeman of the country; and by holding the jury's right to return a general verdict in all cases sacred, we secure to the people at large, their just and rightful controul in the judicial department. If the conduct of judges shall be severe and arbitrary, and tend to subvert the laws, and change the forms of government, the jury may check them, by deciding against their opinions and determinations, in similar cases. It is true, the freemen of a country are not always minutely skilled in the laws, but they have common sense in its purity, which seldom or never errs in making and applying laws to the condition of the people, or in determining judicial causes, when stated to them by the parties. The body of the people, principally, bear the burdens of the community; they of right ought to have a controul in its important concerns, both in making and executing the laws, otherwise they may, in a short time, be ruined. Nor is it merely this controul alone we are to attend to; the jury trial brings with it an open and public discussion of all causes, and excludes secret and arbitrary proceedings.

\* \* \* \* \* \*

But it is said, that no words could be found by which the states could agree to establish the jury-trial in civil causes. (footnote omitted). I can hardly believe men to be serious, who make observations to this effect. The states have all derived judicial proceedings principally from one source, the British system; from the same common source the American lawyers have almost universally drawn their legal information. All the states have agreed to establish the trial by jury, in civil as well as in criminal causes.

*The Complete Anti–Federalist*, edited with commentary and notes by Herbert J. Storing, Volume 2 (Objections of Non-signers of the Constitution and Major Series of Essays at the Outset, University of Chicago Press), pp. 316–17, 320, 321.

During the early years after ratification, controversial Supreme Court Justice, Samuel Chase, while riding circuit as a trial judge, presided over the famous *Callender* trial and refused to allow Callender's lawyers to argue the law to the jury. This allegedly shocking deviation from the norm was perhaps the most serious charge contained in a bill of impeachment brought by the House against Chase. Chase was tried by the Senate and barely avoided conviction and removal from judicial office. It was not until Chase's acquittal that federal courts felt comfortable in instructing jurors *not* to use their own judgment as to what the law should be and instead to take the law from the judge. Thomas Jefferson, who watched Chase's later metamorphosis from a hard-core Federalist into a moderate Republican, shared with his many Republican friends a visceral distrust of judges. It was Jefferson and his friends who insisted upon and got the Seventh Amendment. This court certainly does not quarrel with the end result of Jefferson's demand and of Chase's acquittal. Today, no lawyer would deny the proposition that juries should be limited to their role as triers of the facts. By the same token, the fact that Chase was brought to answer before the Senate on a charge of refusing to allow the jury to pass on the law as well as on the facts well illustrates how dear the people of his generation, the generation which ratified the Constitution, held the right to trial by jury in civil cases, and how jealously they guarded against any erosion of that right. If Chase had directed a verdict against Callender, he would surely have been impeached.

■ It is the view of this court, shaped and colored by recent Supreme Court decisions, that the Seventh Amendment prevents Congress from creating a cause of action without affording the parties to the cause a trial by jury if that action could result in the recovery of money in excess of $20.00. Perhaps this explains why Congress has never passed any legislation which purports to deny a jury trial under

such circumstances; Congress has always understood that the right to jury trial is supplied by the Seventh Amendment. A more cynical view is that Congress has believed, perhaps with some reason, that elitist judges will "do the right and necessary thing" *despite the clear command of the Seventh Amendment.* In other words, if a judicial elite decides that juries cannot be trusted to make the findings of fact required in an area of controversy calling for superior knowledge or a higher degree of sophistication, then there shall be no right to trial by jury. This court prefers to give Congress the benefit of the doubt and to assume that it knows that it is bound by the Constitution, and therefore to conclude that the correct explanation for the absence of any reference to jury trial in ERISA and in Title VII, insofar as claims of legal entitlement are concerned, is a conscious recognition by Congress of the Seventh Amendment imperative. The Seventh Amendment supplies the right to jury trial, making any legislative expression on the subject mere surplusage.

Now surrounded by good company, including the Supreme Court, this court has lost the timidity it displayed in *Whitt* and will deny defendants' motion to strike plaintiff's jury demand in this ERISA case.