See also, 754 F.Supp. 849.

Craig A. Alexander, Duncan Bissell Blair, Mary Beth O'Neill, Lange Simpson Robinson & Somerville, Birmingham, Ala., for plaintiff and counterclaim defendant.

Edward L. Hardin, Jr., Hardin Taber & Tucker, Birmingham, Ala., for defendants and counterclaimants.

**BLUE CROSS AND BLUE SHIELD OF ALABAMA, Plaintiff and Counterclaim Defendant,**

v.

**J. William LEWIS, et al., Defendants and Counterclaimants.**

**Civ. A. No. 90–AR–1107–S.**

United States District Court, N.D. Alabama, S.D.

Dec. 31, 1990.

Addendum Jan. 3, 1991.

### MEMORANDUM OPINION AND ORDER

ACKER, District Judge.

On December 13, 1990, this court granted the motion of Blue Cross and Blue Shield of Alabama, plaintiff in the above-entitled cause, to strike the jury demand of defendants, J. William Lewis and Lorraine S. Lewis, individually and as parents of Diedre M. Lewis, a minor.[1] At the time the

---

1. ORDER
The court has for consideration the motion of Blue Cross and Blue Shield of Alabama, plaintiff in the above-styled cause, to strike defendants' jury demand. Simultaneously with this court's opinion in *Rhodes v. Piggly Wiggly Alabama Distributing Co., Inc.,* 741 F.Supp. 1542 (N.D.Ala.1990), the Eleventh Circuit decided *Blake v. Unionmutual Stock Life Ins. Co. of America,* 906 F.2d 1525 (11th Cir.1990), in which there will be filed a petition for certiorari

to the Supreme Court of the United States. When this court wrote *Rhodes,* it was unaware of *Blake.* The Eleventh Circuit did not have *Rhodes* to consider when it wrote *Blake,* but it did have available all of the materials which this court had in *Rhodes.* Since *Blake* and *Rhodes, Weber v. Jacobs Manufacturing Co.,* 17 BNA Pension Reporter 1983 (D.C.Conn.1990), has found that ERISA claims which are similar to common law legal claims carry a right to trial by jury. Nevertheless, at least for the time

Lewises' jury demand was stricken this court was unaware of *Ingersoll–Rand Co. v. McClendon,* —— U.S. ——, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), decided on December 3, 1990, *after* the Eleventh Circuit had decided *Blake v. Unionmutual Stock Life Ins. Co. of America,* 906 F.2d 1525 (11th Cir.1990). When the Eleventh Circuit on July 30, 1990, held in *Blake* that there is no Seventh Amendment right to jury trial in any action brought under the Employee Retirement Income Security Act of 1974, it could not have known of *Ingersoll–Rand* because *Ingersoll–Rand* had not been decided. When on December 13, 1990, this court automatically followed *Blake,* this court was blissfully unaware of *Ingersoll–Rand* because at that time this court had not read the advance sheets. This court now understands why the anticipated petition for certiorari in *Blake* was not filed and why that case has been settled.

The only basis for this court's jurisdiction is the existence of a "federal question" created by the invocation of ERISA as the basis for Blue Cross' requested enforcement of a subrogation/reimbursement clause in an employee medical benefit plan. Blue Cross' purpose is to intercept or to recover from the Lewises, who are plan beneficiaries, monies to be paid to them by the liability insurance carrier of a third-party tortfeasor who caused the Lewises severe personal injuries. This court earlier denied Blue Cross' motion for preliminary injunction, expressing the belief that Blue Cross will not suffer irreparable harm, if prior to final judgment, the Lewises obtain possession of the proceeds of the tortfeasor's liability insurance. Put another way, this court believed that Blue Cross had an adequate remedy at law. The Lewises filed an answer and counterclaim in which they deny any obligation under the subrogation/reimbursement agreement and claim that Blue Cross is obligated to pay them more in medical benefits than it has yet paid. They attack the subrogation/reimbursement provision, claiming

that it is void and unenforceable as a violation of public policy, because the provision was never properly approved by the Insurance Department of the State of Alabama and instead was the product of procedural chicanery practiced on the State and the plan beneficiaries by Blue Cross. But for the Eleventh Circuit's broad holding in *Blake* that no claim brought under ERISA ever carries any Seventh Amendment entitlement to jury trial (on the theory that all ERISA claims are, by statutory definition, "equitable"), both Blue Cross' complaint and the Lewises' counterclaim can only be described as claims which have traditionally been thought of as *legal.* This is the reason this court found the existence of an adequate remedy *at law.* As legal claims this complaint and counterclaim would clearly come within this court's argument in support of the Seventh Amendment in *Rhodes v. Piggly Wiggly Alabama Distributing Co., Inc.,* 741 F.Supp. 1542 (N.D.Ala. 1990), and *Whitt v. Goodyear Tire & Rubber Co.,* 676 F.Supp. 1119 (N.D.Ala.1987). This court's reasoning was impliedly rejected in *Blake.*

The question, then, becomes: What effect did *Ingersoll–Rand* have on *Blake?* All justices of the Supreme Court joined Justice O'Connor in these straightforward findings in *Ingersoll–Rand:*

> [T]he [Texas] court held that under Texas law a plaintiff could recover in a wrongful discharge action if he established that "the principal reason for his termination was the employer's desire to avoid contributing to or paying benefits under the employee's pension fund." *Ibid.* The court noted that federal courts had held similar claims preempted by ERISA, but distinguished the present case on the basis that McClendon was "not seeking lost pension benefits but [was] instead seeking *future lost wages, mental anguish and punitive damages* as a result of the wrongful discharge." Because this issue has divided state and

being, *Blake* is binding on this court, meaning that plaintiff's motion to strike the jury demand is due to be granted.

DONE this 13th day of December, 1990.

/s/ William M. Acker, Jr.
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

federal courts, we granted certiorari, and now reverse.

111 S.Ct. at 481 (citations omitted, emphasis supplied).

\* \* \* \* \* \*

Not only is § 502(a) [29 U.S.C. §§ 1132(a)(1) and (3) ] the exclusive remedy for vindicating § 510 protected rights, *there is no basis in § 502(a)'s language for limiting ERISA actions to only those which seek "pension benefits." It is clear that the relief requested here is well within the power of federal courts to provide.* Consequently, it is no answer to a preemption argument that a particular plaintiff is not seeking recovery of pension benefits.

111 S.Ct. at 486 (emphasis supplied).

*Ingersoll–Rand* brings to full flower the following idea expressed by Judge Vance in *Kane v. Aetna Life Ins. Co.,* 893 F.2d 1283 (11th Cir.1990):

> Federal courts possess the authority, however, to develop a body of federal common law to govern issues in ERISA actions not covered by the act itself.

*Id.* at 1285.

In *Amos v. Blue Cross–Blue Shield of Alabama,* 868 F.2d 430 (11th Cir.1989), the Eleventh Circuit, prior to *Ingersoll–Rand,* had carried the concept of ERISA "preemption" to its ultimate reach. *Amos* would eliminate the possibility of recognizing any statutorily unspecified federal remedy under ERISA, especially if it would duplicate any "preempted" state remedy. *Amos* ended with the following near apology:

> We acknowledge that by eliminating the possibility that insurance companies may be liable for punitive or extra-contractual damages, the courts are removing an historical disincentive to insurance company misbehavior. Consequently, our decision may produce unintended results. However, any change in the law's course will have to be charted by the Congress *or the Supreme Court.*

*Id.* at 433 (emphasis supplied).

In *Ingersoll–Rand* the Supreme Court has now clearly answered the Eleventh Circuit's prayer by giving it the "green light"

to fashion ERISA remedies beyond the mere enforcement of claims for unpaid benefits, even though a federally fashioned remedy may bear a striking similarity to some "preempted" state or common law remedy. According to *Ingersoll–Rand,* a court, state or federal, in an ERISA case, may, as an ERISA remedy, award extra-contractual, even punitive, damages, that is, if the facts call for such a remedy. This was the idea which this court was endeavoring to articulate in *Amos v. Blue Cross–Blue Shield of Alabama,* 681 F.Supp. 1515 (N.D.Ala.1988). This court did not and could not express the idea as forcefully as Justice O'Connor has now expressed it. Some ERISA-governed employers and administrators claim to be in a state of shock in the wake of *Ingersoll–Rand.* They say that the Supreme Court did not know what it was saying in *Ingersoll–Rand.* This court respectfully disagrees, being willing to attribute literacy to the Supreme Court. This court can read and can understand the English language and believes that the Supreme Court would not say something this important without being careful and deliberate in its choice of words. After all, the Supreme Court granted certiorari in *Ingersoll–Rand* for the very reason that the "preemption" question "has divided state and federal courts". 111 S.Ct. at 481. The Supreme Court would not undertake to clear up the differences of opinion in a way which would create a new basis for misunderstanding. There is no reason in *Ingersoll–Rand* for any misunderstanding of the Supreme Court's intent.

Although *Ingersoll–Rand* does not speak directly to the question of the Seventh Amendment's application to ERISA cases, the fact that *Ingersoll–Rand* now recognizes the possibility of a recovery of tort-like damages in ERISA cases leads inexorably to the right to the trial by jury, the right for which this court argued in *Rhodes,* while unaware of *Blake* and of *Ingersoll–Rand. See also Beesley v. The Hartford Fire Insurance Company, etc., et al.,* 717 F.Supp. 781 (N.D.Ala.1989), and 723 F.Supp. 635 (N.D.Ala.1989), *Walton v. Cowin Equipment Co., Inc.,* 733 F.Supp. 327 (N.D.Ala.1990); and *Walker v.*

*Anderson Elec. Connectors*, 736 F.Supp. 253 (N.D.Ala.1990) and 742 F.Supp. 591 (N.D.Ala.1990).

A district court is not bound by the most recent expression of its circuit court of appeals on a particular subject *if* that most recent intermediate appellate holding has been undercut by a subsequent Supreme Court opinion. Were this not so, this court would still be bound to hold that a public employee who invokes 42 U.S.C. § 1983 as a means for recovering money for his or her lost wages and benefits as a result of a constitutional deprivation, is not entitled to a jury trial. Why? Because the Eleventh Circuit has never publicly disavowed what it said in *Sullivan v. School Board of Pinellas County*, 773 F.2d 1182 (11th Cir. 1985), where it held:

> The district court was correct in holding that appellant's claims were equitable and therefore not the proper subject of a jury trial. Appellant seeks reinstatement, *backpay and reimbursement for "other lost professional benefits,"* all of which are equitable whether sought under Title VII or *section 1983.*

*Id.* at 1187 (emphasis supplied).

*Sullivan* was decided in 1985. *Tull v. United States*, 481 U.S. 412, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987), was decided two years later. In *Santiago–Negron v. Castro–Davila*, 865 F.2d 431 (1st Cir.1989), the First Circuit cited the Eleventh Circuit's above-quoted holding in *Sullivan* as a pre-*Tull* view, but followed the *Sullivan* reference with a comprehensive analysis of the § 1983 jury trial issue in view of *Tull*, and correctly concluded:

> There can be no doubt that § 1983 actions create tort liability with damages determined under the common law of torts.

*Id.* at 440.

\*　　\*　　\*　　\*　　\*　　\*

In tort actions for personal injury tried to a jury, lost wages are invariably treated as being part of compensatory damages. Unlike the calculations required to assess the civil penalty in *Tull*, the computation of back pay normally requires only the addition (or multiplication) of a fixed sum. To paraphrase *Tull*, these are the kinds of calculations traditionally performed by juries. *See* 107 S.Ct. at 1840. Our analysis leads us to conclude that the determination of back pay as a factor of compensatory damages involves the substance of a common-law right to a trial by jury. *See Tull*, 107 S.Ct. at 1840.

*Id.* at 441.

The fact is that the Supreme Court in *Tull* overruled the Eleventh Circuit's holding in *Sullivan* that back pay does not present a jury triable issue under § 1983. Likewise, the Supreme Court in *Ingersoll–Rand*, by holding that extra-contractual damages can be recovered in a case in which an ERISA administrator commits an egregious fraud or commits an aggravated act of bad faith, has overruled the Eleventh Circuit's holding in *Blake*. It is impossible for this court to ignore this new direction clearly pointed out by the Supreme Court. The decision in *Ingersoll–Rand* requires this court *sua sponte* to reconsider and to reverse its ruling of December 13, 1990, and to reinstate this case to the jury trial docket. It is so ORDERED.

ADDENDUM

After this court entered its memorandum opinion and order of December 31, 1990, reinstating trial by jury in the above-entitled cause, the court received from the Commission on the Bicentennial of the United States Constitution a beautiful calendar for the year 1991 commemorating the birthday two centuries ago of the Bill of Rights. For the month of July, under an impressive artist's representation of a jury intensely observing the trial of a case, the Commission, which is an official agency of the United States, chaired by former Chief Justice Burger, gave the following history of the Seventh Amendment:

> The Framers recognized the supreme importance of the right to trial by jury by including it in the Constitution. Many who opposed the Constitution's ratification, however, believed that the simple guarantee of trial by jury in criminal cases was insufficient. They wanted guarantees spelled out as they had been

in the Northwest Ordinance of 1787. In the end, there was little disagreement in the passage of the Bill of Rights about the several specifics of due process articulated in the Sixth Amendment.

There had been disagreement, however, over whether or not the guarantee of trial by jury should be extended to civil cases. Those opposed pointed out that the diversity of civil law made such a guarantee impractical. James Iredell, who later became one of the first Associate Justices of the Supreme Court, explained to George Mason that civil cases had not been included because it was a "complicated business," better left to "future legislatures." Mason believed otherwise. Hadn't such a guarantee been included in the Virginia Declaration of Rights? There Mason had written: "In controversies respecting property, and in suits between man and man, the ancient trial by jury is one of the greatest securities to the rights of the people, and to remain sacred and inviolable."

In the end, the Seventh Amendment included in the Bill of Rights a provision for trial by jury in civil cases. It assured that the federal government would honor the *status quo* of the jury system in civil law cases, and that is how the courts have generally read the amendment ever since.

Two hundred years later, the Supreme Court's rapid rediscovery of the importance of the "sacred and inviolable" guarantee of trial by jury in civil cases simply echoes the information proving the intent of the framers of the Seventh Amendment, quoted from the Anti–Federalist by this court in *Rhodes v. Piggly Wiggly Distributing Co., Inc.*, 741 F.Supp. 1542, 1544–55 (N.D.Ala. 1990).

Because of the timeliness of this official historical analysis of the Seventh Amendment today received, the court feels it not inappropriate to supplement its opinion of December 31, 1990, with this short addendum.