584 So.2d 1291 (1991)
Tommie L. HAYWOOD
v.
RUSSELL CORPORATION, et al.
89-1647.
Supreme Court of Alabama.
May 24, 1991.
Rehearing Denied August 9, 1991.
James M. Patton of Patton & Goodwyn, Birmingham, for appellant.
Randall S. Haynes and Tom Radney of Radney & Morris, Alexander City, for appellees.
SHORES, Justice.
Tommie L. Haywood sued her employer, Russell Corporation ("Russell"), alleging that it had interfered with her right to receive benefits under the company's group disability insurance plan (hereinafter sometimes referred to as "the plan"). Haywood sought to recover both compensatory and punitive damages based on theories of fraud and the tort of outrage. The trial court entered a summary judgment for Russell on both of Haywood's claims on the ground that they were preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 88 Stat. 829, as amended, 29 U.S.C. § 1001 et seq.[1] Haywood appealed. On appeal, she challenges the summary judgment only as to the fraud claim. We reverse and remand.
After allegedly sustaining an on-the-job injury, Haywood filed a claim for workmen's compensation benefits with Russell, which is a self-insured employer under Alabama's Workmen's Compensation Act, Ala. Code 1975, § 25-5-1 et seq. Russell disputed that claim and denied Haywood's request for benefits. Haywood then submitted an application to Russell for benefits under the company's group disability insurance plan. That plan was underwritten by John Hancock Insurance Company ("John Hancock"). Russell's insurance clerk refused to process Haywood's claim because she had stated in her application that her injury was job related. The clerk returned the application to Haywood with a note stating: "For you to be able to receive your accident and sickness [insurance], we need for you to come by the Personnel Office and change the form so that it does not state that it was an injury on the job." Haywood refused to change her application, and it was not submitted to John *1292 Hancock. Haywood subsequently discovered that John Hancock would pay disability benefits to her, provided that she would agree to pursue her workmen's compensation claim and provided further that she would assign to John Hancock her right to any workmen's compensation benefits that she recovered, to the extent of benefits paid under the plan. Haywood eventually received benefits from John Hancock under the plan, more than a year after her application had been returned to her by Russell's insurance clerk. Haywood continued to pursue her workmen's compensation claim against Russell, and that claim is presently pending in Tallapoosa Circuit Court.
The sole issue presented for our review is whether Haywood's fraud claim, which is based on allegations that Russell interfered with Haywood's right to receive benefits under the company's group disability insurance plan, was preempted by ERISA.
ERISA comprehensively regulates, among other things, employee welfare benefit plans that, through the purchase of insurance or otherwise, provide medical, surgical, or hospital care, or benefits in the event of sickness, accident, disability, or death. See § 3(1) of ERISA, as set forth in 29 U.S.C. § 1002(1). Russell's group disability insurance plan is, therefore, clearly regulated by ERISA. Relying primarily on Harbor Ins. Co. v. Blackwelder, 554 So.2d 329 (Ala.1989), cert. denied, ___ U.S. ___, 110 S.Ct. 2209, 109 L.Ed.2d 535 (1990), and HealthAmerica v. Menton, 551 So.2d 235 (Ala.1989), cert. denied, 493 U.S. 1093, 110 S.Ct. 1166, 107 L.Ed.2d 1069 (1990), Haywood argues that her fraud claim was not preempted by ERISA. Russell contends that Haywood's fraud claim, being based on allegations that her employer had interfered with her right to receive benefits under the plan, was preempted by ERISA. We agree, but for the reason stated below, hold that § 502(a) provides a remedy to Haywood.
In the most recent decision of the United States Supreme Court dealing with ERISA preemption, Ingersoll-Rand Co. v. McLendon, ___ U.S. ___, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), the Court was confronted with the issue of whether ERISA preempted a state common law claim based on allegations that the employee had been wrongfully discharged by his employer to prevent his pension benefits under an ERISA regulated pension plan from vesting. Holding that that state claim was both expressly and impliedly preempted, the Court once again elaborated on the preemptive effect of ERISA. We quote extensively from the Court's opinion:
"`ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans,' Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983).... As part of this closely integrated regulatory system Congress included various safeguards to preclude abuse and `to completely secure the rights and expectations brought into being by this landmark reform legislation.' S.Rep. No. 93-127, p. 36 (1973). Prominent among these safeguards are three provisions of particular relevance to this case: § 514(a), 29 U.S.C. § 1144, ERISA's broad pre-emption provision; § 510, 29 U.S.C. § 1140, which proscribes interference with rights protected by ERISA; and § 502(a), 29 U.S.C. § 1132(a), a `"carefully integrated"` civil enforcement scheme that `is one of the essential tools for accomplishing the stated purposes of ERISA.' Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 52, 54, 107 S.Ct. 1549, 1555, 1556-57, 95 L.Ed.2d 39 (1987).
"We must decide whether these provisions, singly or in combination, pre-empt the cause of action at issue in this case. `[T]he question whether a certain state action is pre-empted by federal law is one of congressional intent. "The purpose of Congress is the ultimate touchstone."` Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 208, 105 S.Ct. 1904, 1909-10, 85 L.Ed.2d 206 (1985) (internal quotation omitted) (quoting Malone v. White Motor Corp., 435 U.S. 497, 504, 98 S.Ct. 1185, 1189-90, 55 L.Ed.2d 443 (1978). To discern Congress' intent we examine the explicit statutory language and the structure *1293 and purpose of the statute. See FMC Corp. v. Holliday, 498 U.S. ___, ___, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990) (citing Shaw v. Delta Air Lines, Inc., supra, 463 U.S., at 95, 103 S.Ct., at 2898-99). Regardless of the avenue we followwhether explicit or implied preemptionthis state law cause of action cannot be sustained.
"A
"Where, as here, Congress has expressly included a broadly worded preemption provision in a comprehensive statute such as ERISA, our task of discerning congressional intent is considerably simplified. In § 514(a) of ERISA, as set forth in 29 U.S.C. § 1144(a), Congress provided:
"`Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.'
"`The pre-emption clause is conspicuous for its breadth.' FMC Corp., supra, ___ U.S., at ___, 111 S.Ct., at 407.... The key to § 514(a) is found in the words `relate to.' Congress used those words in their broad sense, rejecting more limited pre-emption language that would have made the clause `applicable only to state laws relating to the specific subjects covered by ERISA.' Shaw, supra, 463 U.S., at 98, 103 S.Ct., at 2900-01. Moreover, to underscore its intent that § 514(a) be expansively applied, Congress used equally broad language in defining the `State law' that would be pre-empted. Such laws include `all laws, decisions, rules, regulations, or other State action having the effect of law.' § 514(c)(1), 29 U.S.C. § 1144(c)(1).
"`A law "relates to" an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan.' Shaw, supra, at 96-97, 103 S.Ct., at 2900. Under this `broad common-sense meaning,' a state law may `relate to' a benefit plan, and thereby be pre-empted, even if the law is not specifically designed to affect such plans, or the effect is only indirect. Pilot Life, supra, 481 U.S., at 47, 107 S.Ct., at 1552-53. See also Alessi v. Raybestos-Manhattan, Inc., supra, 451 U.S. [504], at 525, 101 S.Ct. [1895], at 1907 [68 L.Ed.2d 402 (1981) ]. Pre-emption is also not precluded simply because a state law is consistent with ERISA's substantive requirements. Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 739, 105 S.Ct. 2380, 2388-89, 85 L.Ed.2d 728 (1985).
"Notwithstanding its breadth, we have recognized limits to ERISA's pre-emption clause. In Mackey v. Lanier Collection Agency & Service, Inc., 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), the Court held that ERISA did not pre-empt a State's general garnishment statute, even though it was applied to collect judgments against plan participants. Id., at 841, 108 S.Ct., at 2191. The fact that collection might burden the administration of a plan did not, by itself, compel pre-emption. Moreover, under the plain language of § 514(a) the Court has held that only state laws that relate to benefit plans are pre-empted. Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 23, 107 S.Ct. 2211, 2223-24, 96 L.Ed.2d 1 (1987). Thus, even though a state law required payment of severance benefits, which would normally fall within the purview of ERISA, it was not pre-empted because the statute did not require the establishment or maintenance of an ongoing plan. Id., at 12, 107 S.Ct., at 2217-18.
"....
"We have no difficulty in concluding that the cause of action which the Texas Supreme Court recognized herea claim that the employer wrongfully terminated plaintiff primarily because of the employer's desire to avoid contributing to or paying benefits under the employee's pension fund'relate[s] to' an ERISAcovered plan within the meaning of § 514(a), and is therefore pre-empted.
"....

*1294 "B
"Even if there were no express preemption in this case, the Texas cause of action would be pre-empted because it conflicts directly with an ERISA cause of action. McClendon's claim falls squarely within the ambit of ERISA § 510, which provides:
"`It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan....' 29 U.S.C. § 1140 (emphasis added).

"By its terms § 510 protects plan participants from termination motivated by an employer's desire to prevent a pension from vesting. Congress viewed this section as a crucial part of ERISA because, without it, employers would be able to circumvent the provision of promised benefits. S.Rep. No. 93-127, pp. 35-36 (1973); H.R.Rep. No. 93-533, p. 17 (1973). We have no doubt that this claim is prototypical of the kind Congress intended to cover under § 510. [Emphasis added.]
"`[T]he mere existence of a federal regulatory or enforcement scheme,' however, even a considerably detailed one, `does not by itself imply pre-emption of state remedies.' English v. General Electric Co., 496 U.S. ___, ___, 110 S.Ct. 2270, 2279, 110 L.Ed.2d 65 (1990). Accordingly, `"we must look for special features warranting pre-emption."` Ibid. (quoting Hillsborough County v. Automated Medical Laboratories, Inc., 471 U.S. 707, 719, 105 S.Ct. 2371, 2378, 85 L.Ed.2d 714 (1985)).
"Of particular relevance in this inquiry is § 502(a)ERISA's civil enforcement mechanism. That section as set forth in 29 U.S.C. §§ 1132(a)(3), (e), provides, in pertinent part:
"`A civil action may be brought
"`(3) by a participant ... (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;
"`....
"`(e)(1) Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by ... a participant.' (Emphasis added.)
"In Pilot Life we examined this section at some length and explained that Congress intended § 502(a) to be the exclusive remedy for rights guaranteed under ERISA, including those provided by § 510:
"`[T]he detailed provisions of § 502(a) set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA. "The six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted ... provide strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly."` 481 U.S., at 54, 107 S.Ct., at 1556 (quoting Massachusetts Mutual Life Ins. Co. v. Russell, 473 U.S. 134, 146, 105 S.Ct. 3085, 3092, 87 L.Ed.2d 96 (1985))."
___ U.S. at ___, 111 S.Ct. at 482-85.
The Supreme Court then stated that although the state causes of action were preempted by ERISA, ERISA expressly *1295 guaranteed the same right by § 510 and could be enforced exclusively by the remedy provided by § 502(a).
The Court unequivocally stated:
"Not only is § 502(a) the exclusive remedy for vindicating § 510-protected rights, there is no basis in § 502(a)'s language for limiting ERISA actions to only those which seek `pension benefits.' It is clear that the relief requested here [compensatory and punitive damages for tortiously terminating a participant's employment] is well within the power of federal courts to provide. Consequently, it is no answer to a pre-emption argument that a particular plaintiff is not seeking recovery of pension benefits."
___ U.S. at ___, 111 S.Ct. at 486.
All of the Justices of the Supreme Court joined Justice O'Connor in the following statements:
"[T]he [Texas] court held that under Texas law a plaintiff could recover in a wrongful discharge action if he established that `the principal reason for his termination was the employer's desire to avoid contributing to or paying benefits under the employee's pension fund.' The court noted that federal courts had held similar claims pre-empted by ERISA, but distinguished the present case on the basis that McClendon was `not seeking lost pension benefits but [was] instead seeking future lost wages, mental anguish and punitive damages as a result of the wrongful discharge.'
"Because this issue has divided state and federal courts, we granted certiorari, and now reverse."
___ U.S. at ___, 111 S.Ct. at 481-82 (citations omitted; emphasis omitted; emphasis added).
The facts in the case before us are indistinguishable from those in Ingersoll-Rand. In that case the employee alleged that his employer had tortiously terminated his employment just before his plan benefits would have vested and that he had been damaged as a result of that alleged action of the employer. The Supreme Court held that a remedy for that tort existed under § 510 and that the state court was authorized to award damages beyond the benefits to which the plaintiff was entitled under the plan. In this case the plaintiff alleges facts from which a factfinder could conclude that the employer tortiously interfered with her right to disability benefits under an ERISA plan. She seeks compensatory and punitive damages for that interference. Ingersoll-Rand teaches that this plaintiff's allegations state a cause of action under § 510 and that a remedy exists under § 502(a) that may be enforced in the federal or state courts notwithstanding that the state common law tort claim is preempted by the Act.
We reverse the judgment of the trial court and remand the cause to permit the plaintiff to attempt to prove an ERISA cause of action against her employer for tortiously interfering with her right to receive disability benefits. This is a right expressly guaranteed to her by § 510, ERISA, and for which § 502(a) provides a remedy. Ingersoll-Rand, at ___ U.S. at ___, 111 S.Ct. at 486. If she can prove that the defendant interfered with rights protected by § 510, 29 U.S.C. § 1140, she is entitled to recover compensatory and punitive damages, depending upon the culpability of the defendant in interfering with those rights. The prohibitions set out in § 510 were aimed primarily at preventing unscrupulous employers from interfering with an employee's rights under ERISA plans. If the plaintiff can show that her employer wrongfully interfered with her right to benefits under the disability insurance plan, she is entitled to such damages as the evidence may support.
We are not concerned that the plaintiff here has not heretofore sought relief under ERISA. The Supreme Court opinion in Ingersoll-Rand, expressly stating that ERISA authorizes relief beyond that expressly provided in the Act was not released until December 3, 1990, although other federal courts had held that remedies available to participants in ERISA plans were not limited to those specifically provided by the act. The late Judge Robert S. Vance, in an opinion issued after his death, anticipated such action by the Supreme *1296 Court of the United States. In Kane v. Aetna Life Insurance Co., 893 F.2d 1283 (11th Cir.1990), cert. denied, ___ U.S. ___, 111 S.Ct. 232, 112 L.Ed.2d 192 (1990). Judge Vance, writing for the United States Court of Appeals for the 11th Circuit, stated that although ERISA preempts all state common law claims relating to employee benefit plans, "Federal courts possess the authority, ... to develop a body of federal common law to govern issues in ERISA actions not covered by the act itself." District Judge William M. Acker, Jr., in Blue Cross & Blue Shield of Alabama v. Lewis, 753 F.Supp. 345 (N.D.Ala.1990), observed that "Ingersoll-Rand brings to full flower" the idea expressed by Judge Vance that federal courts have the authority to develop remedies beyond those expressly provided by ERISA. Judge Acker then stated:
"In Amos v. Blue Cross-Blue Shield of Alabama, 868 F.2d 430 (11th Cir.1989), the Eleventh Circuit, prior to Ingersoll-Rand, had carried the concept of ERISA `preemption' to its ultimate reach. Amos would eliminate the possibility of recognizing any statutorily unspecified federal remedy under ERISA, especially if it would duplicate any `preempted' state remedy. Amos ended with the following near apology:
"`We acknowledge that by eliminating the possibility that insurance companies may be liable for punitive or extra-contractual damages, the courts are removing an historical disincentive to insurance company misbehavior. Consequently, our decision may produce unintended results. However, any change in the law's course will have to be charted by the Congress or the Supreme Court.'

"Id. at 433 (emphasis supplied [by Judge Acker]).
"In Ingersoll-Rand the Supreme Court has now clearly answered the Eleventh Circuit's prayer by giving it the `green light' to fashion ERISA remedies beyond the mere enforcement of claims for unpaid benefits, even though a federally fashioned remedy may bear striking similarity to some `preempted' state or common law remedy. According to IngersollRand, a court, state or federal, in an ERISA case, may, as an ERISA remedy, award extracontractual, even punitive damages, that is, if the facts call for such a remedy. This was the idea which this court was endeavoring to articulate in Amos v. Blue Cross-Blue Shield of Alabama, 681 F.Supp. 1515 (N.D.Ala.1988). This court did not and could not express the idea as forcefully as Justice O'Connor has now expressed it. Some ERISA-governed employers and administrators claim to be in a state of shock in the wake of Ingersoll-Rand. They say the Supreme Court did not know what it was saying in Ingersoll-Rand. This court respectively disagrees, being willing to attribute literacy to the Supreme Court. This court can read and understand the English language and believes that the Supreme Court would not say something this important without being careful and deliberate in its choice of words. After all, the Supreme Court granted certiorari in Ingersoll-Rand for the very reason that the `preemption' question `has divided state and federal courts.' [___ U.S. at ___,] 111 S.Ct. at 481. The Supreme Court would not undertake to clear up the differences of opinion in a way which would create a new basis for misunderstanding. There is no reason in Ingersoll-Rand for any misunderstanding of the Supreme Court's intent."
753 F.Supp. at 347.
We agree entirely with Judge Acker's reading of Ingersoll-Rand. The holding is unanimous and unequivocal. No reasonable person can misunderstand it, although one might disagree with it. In our view, it comes as no surprise. The dissatisfaction with the Court's broad interpretation of the preemption provisions of ERISA, without specifically articulating what remedies existed to replace preempted state remedies, has been often brought to the attention of Congress by those, such as the writer of this opinion, who believed that the Court's construction of the preemption provisions of ERISA, without a recognition of some rights and remedies to take the place of *1297 preempted state rights and remedies, went beyond what the Congress intended. As recently as 1988, the Education and Labor Committee of the House of Representatives described the legislative intent behind ERISA as follows:
"In recent years, the Committee has received numerous complaints and inquiries from Members of Congress and their constituents about improper denials of medical claims, improper denials of continuation coverage, or unreasonable delays in processing claims by employers or insurers. Participants in ERISA-covered employee benefit plans that have been treated in this manner are concerned that the Supreme Court's interpretation of ERISA (particularly as articulated in Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 107 S.Ct. 1549 [95 L.Ed.2d 39] (1987)) as preempting state laws that authorize punitive or other extra-contractual damages in connection with claims for benefits effectively denies them legal recourse. The Committee shares their concern. In Pilot Life, the Supreme Court held that state common law claims against an insurance company for breach of contract and bad faith arising out of an improper denial of disability benefit claims under an ERISA-covered plan were preempted. In addition, the Supreme Court declined to fashion a federal common law remedy for improper processing of benefit claims holding that ERISA's civil enforcement provisions under Section 502, were intended to be the exclusive remedies afforded to plan participants and beneficiaries. The Committee disagrees with this latter conclusion. The Committee believes that the legislative history of ERISA and subsequent expansions of ERISA support the view that Congress intended for the courts to develop a federal common law with respect to employee benefit plans, including the development of appropriate remedies, even if they are not specifically enumerated in Section 502 of ERISA. Since the issue of preemption and civil remedies under ERISA is within the exclusive purview of the labor committee of Congress, the Committee has, over the years, considered the option of amending the statute to encompass specifically several additional remedies. In light of the legislative history on this issue, however, the Committee believes such action is unnecessary. The Committee reaffirms the authority of the Federal Courts to shape legal and equitable remedies to fit the facts and circumstances of the cases before them, even though those remedies may not be specifically mentioned in ERISA itself. In cases in which, for instance, facts and circumstances show that the processing of legitimate benefit claims has been unreasonably delayed or totally disregarded by an insurer, an employer, a plan administrator, or a plan, the Committee intends the Federal Courts to develop a federal common law of remedies, including (but certainly not limited to) the imposition of punitive damages on the person responsible for the failure to pay claims in a timely manner."

H.R.Rep. No. 801, 100th Cong., 2d Sess, p. 2, at 63 (1988) (emphasis added).
The Supreme Court, in Ingersoll-Rand, has now specifically held that the courts are authorized to award damages, both extracontractual, and even punitive, where the facts support them, even though they are not specifically provided for in ERISA. In doing so, it simply correctly carries out the intent of Congress in passing ERISA.
State courts, with concurrent jurisdiction of ERISA actions, likewise possess such authority. In this case, the cause of action stated happens to be one specifically provided for in ERISA, so the trial court need not go beyond the Act itself to formulate a remedy for the wrong allegedly done the plaintiff. Ingersoll-Rand, of course, would authorize recovery even if the relief sought were not expressly provided for in the Act. Therefore, we reverse the judgment and remand the cause and permit the plaintiff to attempt to state a claim under § 510, ERISA.
In recognizing that ERISA permits such actions, the Supreme Court of the United States acknowledged that the polestar of *1298 any legislation is legislative intent. The Congress of the United States could not have intended to strip from beneficiaries of pension and employee benefit plans all of the protections long afforded by state common law and not to provide a statutory replacement for those state common law protections. Certainly it would not have done so in the guise of passing legislation to protect the very persons whose rights were the focus of the legislation. The fact that the statutory rights bear many of the characteristics of the state remedies that the Act preempted is not unusual. In Alabama the legislature has adopted statutes providing remedies for medical and legal malpractice. Ala.Code 1975, § 6-5-480 et seq; § 6-5-570 et seq. These statutory causes of action bear a striking resemblance to the common law actions they replaced. In specifically authorizing the courts to develop remedies not specifically provided for in ERISA, the Supreme Court now recognizes the possibility of recovery of tort-like damages in ERISA cases. We agree with the observation of Judge Acker in Blue Cross & Blue Shield of Alabama v. Lewis that this leads inexorably to the right of trial by jury in these ERISA cases.
Because the plaintiff has stated a claim protected by § 510, and because § 502(a) provides a remedy that may be adjudicated in the state courts, we reverse the judgment and remand the cause for trial of the ERISA cause of action.
REVERSED AND REMANDED.
HORNSBY, C.J., and ALMON, ADAMS, STEAGALL and KENNEDY, JJ., concur.
MADDOX and HOUSTON, JJ., concur specially.
HOUSTON, Justice (concurring specially).
I dissented in HealthAmerica v. Menton, 551 So.2d 235, 252 (Ala.1989), cert. denied, 493 U.S. 1093, 110 S.Ct. 1166, 107 L.Ed.2d 1069 (1990), not because I liked the doctrine of preemption (I do not), but for the following reasons:
"I am not persuaded that civil actions for bad faith or fraud have anything to do with regulation of employee benefit plans or that the purpose for such actions is to affect the terms and conditions of employee benefit plans. However, I believe that this has been decided otherwise by a higher court; and I cannot justify holding that Menton's cause of action does not `relate to' an employee benefit plan in order to save it from preemption, when the causes of action asserted in Pilot Life [Ins. Co. v. Dedeaux, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987)], for tortious breach of contract and fraud in the inducement and the causes of action asserted in Belasco [v. W.K.P. Wilson & Sons, Inc., 833 F.2d 277 (11th Cir.1987),] for bad faith and fraud were held to `relate to' employee benefit plans and therefore to be preempted. To so hold would be to make a distinction without a difference."
The second paragraph of Article VI of the Constitution of the United States (the supremacy clause) required that I vote to hold that Menton's cause of action was preempted.
Ingersoll-Rand Co. v. McLendon, ___ U.S. ___, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), clarified the preemption question. The cause of action was preempted, with no ifs, ands, or buts about it. This Court in this case recognizes that.
In my dissent in HealthAmerica v. Menton, 551 So.2d at 249-56, I proposed doing what a unanimous United States Supreme Court in Ingersoll-Rand Co. indicated could be done and what this Court is indicating can be done in this case:
"I, as a member of the Supreme Court of Alabama, will not thwart an opportunity for a remedy for one whose right to a particular remedy was foreclosed.... It seems appropriate and altogether just to invoke equitable relief, which is afforded by 29 U.S.C. § 1132(a)(3), to one whose civil cause of action was foreclosed by an expansion of the ERISA preemption....
"I would reverse and remand to permit Menton to amend and proceed with a cause of action under ERISA, 29 U.S.C. § 1132(a)." *1299 551 So.2d at 255-56 (Houston, J., dissenting).
In this case, this Court does exactly what I suggested that the Court should have done in my dissent in HealthAmerica. I join the majority, for, two years after HealthAmerica, it has joined me.
MADDOX, J., concurs.
NOTES
[1] The trial court granted Russell's motion to strike Haywood's claims; however, because it appears that the trial court may have considered matters outside the pleadings, we will treat the trial court's order as a summary judgment. Rule 12(b), A.R.Civ.P.